Nash, J.
 

 The testimony in the case is very voluminous. The witnesses are taken mostly from the immediate vicinity of the proposed pond, and they differ in their opinion as to the effect of the ponding of the water upon the health of the relator’s family, and of the neighborhood. Of the many examined by the relator, but three are decidedly of opinion, that the pond will have the injurious effect, and two of them are citizens of Leasburg, and these out of a population of eighty persons living in the village. Dr. Barnett, a gentleman of high standing in his profession, a witness for the plaintiff, thinks it will not injure the health of the neighborhood, for the reasons he gives. Dr. Walker, another of the plaintiff’s witnesses, is doubtful, and is of opinion that the result would depend upon the fact, whether the stream would possess sufficient power to keep the pond full of water during the summer season. Only three of those examined by the relator, are opposed to the erection of the mill decidedly, and one of those would rather it were not erected from the fear of the result. Out of the number of the defendants’ witnesses, eight think the health of the neighborhood will not be affected, and are in favor of its erection, and the two physicians are of the same opinion as to the probable effect in injuring the health of the neighborhood. In addition to this, it appears from the testimony, that the mill, when erected, will be a public convenience to the neighborhood. In time past, it further appears, that mills had been erected on different parts of Cobb’s creek with ponds, some larger and some smaller than the one contemplated, and that no injury to the health of the neighborhood was experienced, or not more than necessarily results in every case of such an
 
 *304
 
 erection, but that all those mills are now down. The power of the Court of Equity to interfere by injunction, to restrain and forbid the erection of mill dams in cases of this ldnd, is admitted. Whenever any erection is about to be made, which, when made, will be a public nuisance by destroying the health of the neighborhood, or when the injury to an individual and his family is irreparable, and renders immediate action a duty founded on imperious necessity, or when in the case of a private nuisance, the injury is the result of an establishment made for personal gratification or mere private profit, a court of equity will exercise its preventive power. The case of the
 
 Attorney General at the relation of Bell against Blount,
 
 4 Hawk. 384, was that of a public nuisance — as injurious to the citizens of the town of Tarboro’ in rendering the place sickly. The court lay it down as a principle of equity long settled, that where irreparable mischief may be done, as of waste, or
 
 in a plain case of
 
 nuisance, an injunction will be granted; and accordingly, the injunction previously obtained was perpetuated, because, as the court say, the evidence in the case approaches as nearly to ascertain the certainty of the apprehended evil, if not prevented, as can be expected from the nature of the subject. So in the case of
 
 Attorney Generaluponthe relation of the citizens of Raleigh against Hunter,
 
 1 Dev. Eq. 13, which was a case to abate a nuisance already in existence — the court say, we are satisfied beyond a reasonable doubt, from the admissions of the defendant in his answer, that his pond would create a nuisance and that of the worst The injunction was perpetuated.
 
 The Attorney General at the relation of Bason against Perkins,
 
 2 Dev. Eq. R. 38, is the case of a private nuisance to be occasioned by the erection of a mill, whereby the health of the adjoining country, and particularly the health of the relator's family, would be destroyed. An issue was submitted to a jury, and they found that the health of the relator and his family would be injured by the mill pond, but not that of the neighborhood. The bill was dismissed upon the maxim, that private. right must yield to public convenience uppn adequate compensa
 
 *305
 
 tion. And when the mischief arising from the erection of a mill, which is a public convenience, does not extend to the neighborhood, but is confined to a particular family, it cannot, as a general rule under this head, be held a nuisance, to be redressed by abatement or injunction. In the case before us, it does not appear from the evidence, that the erection of the mill pond will endanger the health of the neighborhood, or of the relator’s family. Mills have, from time to time, been erected on the same creek, and in the same neighborhood, without injuriously affecting the air of the neighborhood, or, if so, to a very limited extent. Cobb’s creek is a narrow stream, rarely, if ever, overflowing its banks, with a current, according to some of the testimony, which never fails at the place, where it is intended to erect the mill, and which, in all probability, will keep the pond filled with water. We cannot, therefore, say we are satisfied that effects, so injurious to the health of the neighborhood as to render it a nuisance, will result from the erection of this pond. But it appears to us this is a case of private nuisance, if a nuisance at all, in the erection of a mill, which will be a public convenience. And there is nothing to shew us that there is so great a disproportion between the private suffering and the public convenience, as would authorise the court to interfere. The legislature considers public mills as public conveniences, and encourages their erection even by taking from another so much of his land upon just compensation as may be necessary, unless the mill when erected will be a public nuisance. Rev. Stat. ch. 122. In this case the whole of the land, on which the mill and pond will be, belongs to the defendants ; they have a right to use it, as in their discretion may seem right, provided in doing so, they do not injure the public or private individuals, and when the use they make of it is to the public convenience, and the injurious effect confined to a private individual, the interest of the latter must give way to that of the man y, unless he can make it manifestly appear, that so great a difference exists between his injury and the public convenience, as bears no comparison, and that the erection will be followed by irreparable mischief, in
 
 *306
 
 which case the court will interfere by injunction.
 
 Eason
 
 v.
 
 Per^ns>
 
 2 Dev. Eq. 38. The interference with private rights is, at all times, a delicate subject, from which courts ought to abstain, except in cases of necessity. We see no such necessity here. The most that can be claimedfor the plaintiffunder the testimony is, that it may be doubtful whether the mischief apprehended may not follow the erection of the mill dam. We cannot arrest any longer the action of the defendants on such a case. The answer denies that the improvement of his land was his object in erecting the mill; declares that its erection would be a public convenience, and denies that the health of the neighborhood, or of the Plaintiff would be injured by it — and we think the testimony does not sustain the plaintiff’s bill, but does sustain the defendant’s answer.
 

 On the coming in of the answer, on motion in the court below, the injunction was continued to the hearing; and replication having been taken, the cause was set for hearing, and is in this court now for final hearing. We are of opinion that the interlocutory order made in this case, continuing the injunction to the final hearing, was erroneous, and that the injunction ought to have been dissolved. The bill must be dismissed with costs to be taxed by the master.
 

 Per Curiam, Bill dismissed.