Nash, O. J.
 

 The bill is filed to enjoin the defendant from erecting a mill, upon the allegation that it will canse much damage to the lands of the plaintiffs by rendering them of no value for cultivation where they are cleared, and destoying the timber tand other growth where they are not cleared, and they fear will destroy the health
 
 of
 
 their families. The defendant admits he is about to erect a public mill at the place designated; that the site is a very favorable'one for such an es^-tablishment. He denies that it will overflow or render sobby and unfit for cultivation any part of the lands of the plaintiffs, and denies that it will render the families in the neighborhood unhealthy. The plaintiff’s further allege that a large majority of the neighbors are against the erection of the mill. This is denied by the defendant. The answer further states that the defendant is the owner of a mill on Turkey Creek, which is not more than a half a mile from his new site, and which has a more extensive pond than the contemplated mill, will have; and that it is the opinion of a number of the neighbors that the pulling down of the old mill, which the defendant intends to do, as soon as the new one is erected, and the erection of a new one, will be more useful to the neighborhood, and less injurious to the health of it, than the old one.
 

 The controversy is a matter of evidence. To the testimony then. Does the plaintiffs’ proof sustain their bill ? Many depositions have been taken on both sides.
 
 Wo
 
 will examine the testimony of the plaintiffs first.
 

 11.. 11. Bryant
 
 testifies that the old mill is a wet-weatlier
 
 *389
 
 mill, and that, in the summer months, it cannot make flour, or saw.
 

 Dr. Drake
 
 is of opinion that the breaking up of the old mill will prove benefieial to the health of the neighborhood.
 

 Dr. Matthews
 
 knows the river, and, judging by his eye, thinks a six-foot dam would so raise the water in the river, as to prevent the plaintiff Wilder, from clearing a valuable piece of land, containing forty or fifty acres, and would
 
 likely
 
 produce disease in his family,
 

 Jfr,
 
 Morgan
 
 never leveled the ground, but, judging by his eye, thinks a six-foot dam would back the water up two •or three branches on Wilder’s land, so as
 
 probabT/y,
 
 to overflow some of the low places, covering how much land he does not know; and that the pond
 
 might
 
 injure the health of Wilder’s family; and that it is difficult, at times, to get meal from the old mill,
 

 Mr. Gone
 
 agrees with Mr, Morgan as to the overflowing of the low places in the guts and branches, and as to getting meal; there was a difficulty at times, at the old mill, and he thinks a new mill is necessary to. supply the neighborhood.
 

 Doctor Mann
 
 thinks it probable, that in the year 1846, the families of Williams and Strioftand, were made sickly by the old pond. lie further states, that the old mill cannot supply the neighborhood, and the proposed mill, on the river, is necessary, and will prove a great convenience to the neighbors, there not being a constantly grinding mill for about eighteen miles above it.
 

 Mr.
 
 Taylor> does not think a six-foot dam will pond the water back on the lands of the plaintiffs.
 

 James Strickland,
 
 son of the plaintiff Zadock Strickland, and son-in-law to the plaintiff Wilder, thinks a six-foot dam would throw the water up the guts and ravines, and effectually prevent the draining of portions of the low grounds of Wilder and Strickland, and thinks it would injure the health of their families. Has never known a dam across Tar river to produce sickness.
 

 JReddin Strrickland,
 
 another son of plaintiff Strickland,
 
 *390
 
 thinks as his brother does as to the river dam’s producing sickness in the families of his father and "Wilder, and that it would injure about fifty acres of the land of each.
 

 Oondary 0. /Sfrioldand,
 
 another son of the plaintiff Strickland, agrees with his brothers as to the probable effect of the dam upon the health of the families of Wilder and his father, and thinks about eight or ten acres of the land of both Wilder and his father would be covered by the water.
 

 William Wilder,
 
 a relative, thinks the dam would sob a great deal of the land of the plaintiffs, but does not think it would cover any.
 

 This is the evidence of the plaintiffs. Does it sustain the allegations of their bill? We think it does not. It is true that the river-dam may, and no doubt will, pond the water Tack into the guts and ravines on the lands of the plaintiffs, to the extent of eight or ten acres on each, as stated by C. O. Strickland; but the last witness, Wm. Wilder, and the witness Taylor, do not think it will cover any of their land. The first allegation of the bill is not sustained. As to the second, relating to the effect of the river-dam upon the health of the neighborhood, the physicians who were examined testified as to the origin and effect of malarS, in producing disease. None of them, however, testified that the river-dam would prodirce disease. It might or it might not. Even the sons of the plaintiff Strickland do not say it
 
 will,
 
 but they think it will. This allegation is not sustained.
 

 As to the allegation that the neighbors are in general opposed to the erection of the proposed mill, there is no evidence on the part of the plaintiffs; but there is, from his own witnesses, sufficient evidence to show that the mill contemplated by the defendant is required, not only by the convenience of the neighborhood, but by their necessities. The old mill is a wet-weather mill, and it is often impossible in the summer-time to get even meal from it, and it cannot, at those times make flour, or saw. Every one who depends upon'a wet-weather mill knows the inconvenience to which they are often exposed in sending to a distant river-mill. In this case, Dr. Mann,
 
 *391
 
 a witness of the plaintiffs, states that the contemplated mill is required, not only by tlie necessities of tlie neighborhood, but by its convenience, as there is no mill on the river above it, for upwards of eighteen miles.
 

 Considering the proofs offered by the plaintiffs as not sustaining the allegations of the bill, we have not brought forward, in detail, the proofs of the defendant. They, however, fully sustain the defence, that the contemplated mill will neither injure the health of the families of the plaintiffs, nor cause such an injury to their lands, as will justify the Court in denying to the neighborhood the convenience of a public mill which will grind all the year. Ilis proofs also show that if the river-mill shall prove injurious to the health of the families of the plaintiffs, it will not be as much so as is the old pond which he intends to dispense with as soon as the new mill is erected. If upon such evidence as is offered by the plaintiffs, the courts will interfere to restrain the building of a mill, it must be built in a wilderness where there is no one to be injured, either in health or property; for it must needs be, that in a thickly settled neighborhood, some one must be injured in one Avay or the otli^ "We are satisfied, too, from the testimony of the defendai™ that not only is such a mill required by the necessities and convenience of the neighborhood, but a very large portion of it desires its erection. It is not every slight or doubtful injury, that will justify the Court in exerting their extraordinary power of injunction in restraining a man from using his property as his interest may demand, when the benefit of such user is mutual to the public and to the owner.
 

 Should the fears, real or assumed, of the plaintiffs, as to the effects of the proposed mill upon the health of their respective families be realised, they will not be without redress. The courts of law will be open to them, and they will go into them with more grace, having by these proceedings put the defendant on his guard.
 

 PfiR CURIAM. Bill dismissed with costs.