### LOCKWOOD HYATT *v.* R. L. and T. H. B. MYERS.

Where on a former trial of an action to abate a nuisance, the jury found a verdict not touching the merits of the case; and at a subsequent term, the plaintiff moved to make the injunction prayed for perpetual, when the defendant *bona fide* tendered certain issues involving the merits, and asked that such issues be found by the jury: *it was error* in the Judge to refuse to submit to the jury the issues so tendered, and not to allow further time, in which the question of nuisance or no nuisance, under all the surroundings of the case, with special instructions, could have been submitted to the jury, together with a distinct inquiry upon the question of damages.

(*Dargan* v. *Waddell*, 9 Ired. 244; *Eason* v. *Perkins*, 2 Dev. Eq. 38 cited and approved.)

MOTION in the cause heard before *Moore, J.*, at Spring Term, 1875, PITT Superior Court.

The plaintiff brought an action against the defendants at Spring Term, 1874, of Beaufort Superior Court, alleging That the defendants had erected a steam cotton gin and grist mill in front of the residence of the plaintiff, and that the smoke stack of the gin and mill stand within sixty feet of the plaintiff's residence. When the wind is blowing from the South, the smoke, soot and cinders from the smoke-stack blow into the residence of the plaintiff in such quantities as to injure the health and comfort of himself and family and seriously damage and soil his furniture, and is in consequence thereof a great nuisance. To avoid the smoke, soot and cinders when the wind is blowing from the South, his family are compelled to close the doors and windows on the South and front side of his residence, thus depriving himself and family of the health, comfort and luxury of the southerly winds and keeping them in continual alarm on account of fire. On the 24th day of November last, the wind was blowing in a direction from said smoke-stack directly on the house of the plaintiff, and the live sparks from the smoke-stack set the plaintiff's dwelling on fire, and but for the timely discovery of the said fire and the prompt

effort of the firemen and citizens of the town, his residence, together with a large portion of the town, would have been burned up.

Upon these alleged facts, the plaintiff demanded judgment for one hundred and fifty dollars damages, and that the defendant be enjoined and restrained from working the said steam engine in its present locality and condition, and for cost, &c.

In their answer the defendants alleged: That in 1869, they erected and commenced to use a furnace and engine in the same position in which those they now use are, and attached thereto two gins. About the first of December, 1870, they purchased and attached thereto a grist mill for the convenience of the public, and about the same time attached thereto a linter. Finding that the boiler and furnace they then had were too small for their use, they purchased a larger boiler and furnace and put them in the place of the boiler and furnace aforesaid. Subsequently they purchased and attached thereto a steam cotton press. The said cotton gins and mills have been of great utility and convenience to the citizens of Beaufort and adjoining counties. The boiler and furnace are of sufficient size to run a sixty-horse power engine and having attached thereto only one of twenty-horse power, but little draught is created, so little in fact, that although the defendants purchased at great expense a spark arrester, by reason of the small amount of fire used and the slight draught consequent therefrom, the same cannot be used, as the draught from the furnace is no greater than from an ordinary chimney, nor does it emit more sparks and smoke. Defendants have carefully observed while the furnace and engine were in use, yet they have never seen sparks reach so great a distance as from the smoke-stack to the plaintiff's house. At the time of the erection of the smaller boiler and furnace, the house mentioned in the complaint was the property of Jos. Robinson, who slightly objected to the erection of the said fixtures and talked of obtaining an injunction to prevent their erection,

but never did so, and permitted the defendants to erect the same without hindrance. The plaintiff purchased the house after the erection of the same, after full notice, and until the said fire has never made any objection, but has allowed the defendants to attach many valuable improvements without objection. At the time of the said fire the wind was not blowing in the direction of plaintiff's house, but the smoke was carried between plaintiff's house and one east of it, and in order to reach the place where the fire is said to have originated, a spark would have had to travel at an angle of forty-five degrees against the wind. Since the plaintiff purchased the said house he has not only suffered the defendants to make great improvements upon the said fixtures, but has himself worked thereupon in making and repairing the smoke-stack.

The advantage and convenience to the public arising from the use of said fixtures greatly outweigh any temporary inconvenience and annoyance to the plaintiff arising therefrom, &c.

The following issues were submitted to the jury:

1. Was plaintiff's residence set on fire by defendant's mill on the 24th of November last, and is it highly dangerous in its present location to the plaintiff's residence?

2. Does the plaintiff and his family suffer great inconvenience and annoyance from the smoke, soot and cinders being blown from defendant's mill on and in the plaintiff's house, rendering his condition and that of his family uncomfortable and disagreeable, so as to be a nuisance to him?

The jury could not agree as to the first issue, but found in response to the second, " that it is a nuisance to the plaintiff and family, and assess damages at one cent."

Upon the finding of the jury it was adjudged by the Court that the defendants add twenty feet to the height of their smoke-stack, and attach to it a spark-arrester, on or before the first day of August next.

If, upon experiment, the nuisance is not abated by this addition to the smoke-stack, the plaintiff has leave to renew his motion for a perpetual injunction.

At Spring Term, 1875, the plaintiff moved the Court for a perpetual injunction, after due notice and upon affidavits filed in the cause, when and where the defendants tendered the following issues and demanded that they be submitted to a jury:

1. Whether the mill and factory are not a great public convenience to the citizens of the town of Washington and the vicinity, greatly outweighing any private injury to the plaintiff?

2. Whether the expense to defendants, by the removal of their mill and factory, would not be excessively disproportionate to the injury alleged by the plaintiff to himself?

3. Whether the plaintiff did not purchase his residence long after the erection of defendants' mill, and at a reduced price on account of its locality?

4. Whether the entire water-front of the town of Washington, on which this mill is located, has not been devoted to commerce and manufactures from time immemorial?

5. Whether plaintiff is not actuated by malice and personal unfriendliness to defendants, and seeking to injure them, instead of redressing a wrong?

6. Whether, in its present condition, the mill and fixtures of the defendants are a nuisance to the plaintiff?

.7. Whether the plaintiff has not waived his right to complain of the alleged nuisance by permitting the defendants, since the purchase of his residence, to erect other valuable and costly improvements without objection, working thereon himself, as alleged in the answer herein, and not denied by the plaintiff?

The Court refused the motion.

To the ruling of his Honor the defendants filed the following exceptions:

1. That his Honor refused to allow the issues of fact arising upon the pleadings and proof, to be tried by a jury.

2. That he refused to allow them time to abate the alleged nuisance by removing the top of the new spark-arrester, the same having been erected by them under the former order of

the Court in this case, and against their own judgment and wish.

3. That he refused to submit the issues tendered by the defendants to a jury.

Upon the affidavits filed in the cause, the Court rendered the following judgment:

1. That the mill of the defendants is a great convenience to the public for the purpose for which it was constructed.

2. That said mill can be removed to many other localities in the town of Washington, where it will be equally convenient to the public.

3. There is another steam grist mill situated within said town, capable of supplying the public demand for breadstuffs.

4. That the nuisance complained of by the plaintiff and found by the jury, has not been abated by the elevation of the smoke stack and use of a spark arrester, as prescribed by former order in this action.

On motion, it is adjudged by the Court that the defendants and each of them, and all persons claiming under them, or acting under authority of them, or either of them, are hereby perpetually enjoined and restrained from using said mill and fixtures or either of them, to the nuisance of the plaintiff in his present dwelling house.

From this judgment the defendants appealed.

*D. M. Carter*, for appellants.
*Mullen & Moore*, contra.

PEARSON, C. J.    What is a nuisance, is a question of law. Nuisances are divided into public and private.    There is no suggestion of a public nuisance, that is, an injury to the town of Washington ; but the complaint is of a nuisance to the dwelling house of the plaintiff, by reason of exposure to being set on fire by sparks, and of the annoyance and inconvenience arising from the smoke, soot and cinders coming from the chimney of the defendants' steam grist mill, factory, &c.

In regard to the exposure of the house to being set on fire, the jury disagreed and were not required to give a verdict, so we are to take it there was no danger of fire from sparks. That is out of the case.

Private nuisances vary in degree, and it depends upon the circumstances attendant on each particular case, whether either a Court of law or a Court of equity will give relief.

If a man, instead of contenting himself with the quiet and comfort of a country residence, chooses to live in a town, he must take the inconvenience of noise, dust, flies, rats, smoke, soot and cinders, &c., &c. ; and he cannot in law complain of the owner of an adjoining lot, by reason of smoke, soot and cinders, caused in the use and enjoyment of his property : *Provided*, the use of it is for a reasonable purpose, and the manner of using it is such as not to cause any unnecessary damage or annoyance, and he takes all prudent precautions to avoid annoying his neighbors; and even then, neither a Court of law or a Court of equity will treat it as a nuisance unless the damage is material, so as to exceed what the owner of property ought to be allowed to put upon the owner of property adjoining, in the reasonable enjoyment of his own property, under the maxim, " *sic utere tuo ut alienum non lædas*," which depends upon the circumstances of the case. " Does the nuisance arise from an establishment made for personal gratification or mere private profit ? Or does it promote the convenience of the public ?" What is the extent of the damage ? If slight, the Courts of law may treat it as a nuisance, and give a remedy in damages ; if great and irreparable, so that compensation cannot be made, then a Court of equity will interfere by injunction. These general principles are announced and discussed in *Dargan* v. *Waddell*, 9 Ired., 244, a case showing when Courts of law give relief, and in *Eason* v. *Perkins*, 2 Dev. Eq., 38, a case showing when Courts of equity will interfere by the extraordinary writ of injunction.

A perusal of these cases will show that our case has never been tried upon its merits.

At the first trial, the jury find on the issue, " Does the plain-tiff and his family suffer great inconvenience and annoyance from the smoke, soot and cinders being blown from defendant's mill over in the plaintiff's house, rendering his condition and that of his family uncomfortable and disagreeable, so as to be a nuisance to him ?" " We think it is a nuisance to plaintiff and family," is the verdict—assessing no damages—but upon the idea that the law implies at least nominal damages in every case of nuisance, the verdict was amended under the instruc-tions of the Judge so as to find damages to the amount of one cent.

It is apparent from the case sent up to us, June Term, 1874 (see *Hyatt* v. *Myers*, 71 N. C. Rep., 271,) that the Judge in ' the Court below, upon this finding, hesitated and did not see that he would be warranted by the doctrine of the Court of equity, to put forth the omnipotent arm of the chancellor, and order the grist mill, &c., of the defendants to be torn down ; and concluded to adopt some other mode of abating the sup-posed nuisance, until the question of nuisance or no nuisance had been disposed of more in accordance with the principles of law.   So he makes an order that the chimney be raised higher. From this order, the defendants appeal.

In this Court it is held, that whether the Judge below ought to have left the plaintiff to his remedy at law, or ought to have interfered by injunction, is a matter which this Court is un-able to determine, upon the facts set out in the record. " We can see no error in the order to raise the smoke stack and put on the spark arrester." It would have been more appropriate, simply to have allowed the defendants time to abate the nuisance.

Whether the inconvenience and annoyance suffered by the plaintiff, and his family, by reason of the smoke, soot and cin-ders, amounted to a nuisance or not, taking into consideration the surroundings of the case, was a question of law, about which the Judge ought to have given the jury special instruc-tions, instead of leaving them to say in the abstract, " we think

it is a nuisance to the plaintiff and his family." Whether the inconvenience and annoyance to the plaintiff and his family in his dwelling house, was to such an extent, that the house was no longer fit for a habitation, in which case the interference by injunction was called for on the ground of irreparable injury, or was merely annoying and uncomfortable when the wind was from a certain point so as to admit of compensation in damages, in which case, the plaintiff ought to be left to his remedy at law, is a question which was not submitted to the jury, and yet it is a most material fact, touching the merits of the case.

As the mode of preventing the supposed nuisance directed to be tried by the former order did not answer any good purpose, we think his Honor, upon what seems to have been a *bona fide* offer on the part of the defendants to try some other mode, erred in not allowing further time, until the next term, at which time the question of nuisance or no nuisance under all the surroundings of the case, with special instructions, could have been submitted to a jury, together with a distinct inquiry upon the question of damages, so as to see if the injury, if any, was insignificant, and fell under the rule, *de minibus non curat lex*, which the Court will not class under the head of nuisance, but will treat as an annoyance, which persons who live in towns, near the water-front, where the business of the town is mostly done, are supposed to have made up their minds to endure, by reason of the compensatory advantages of the situation. Or to see whether the injury by reason of the fact that the defendants were causing unnecessary damage for the want of proper precautions and due care, amounted to so much, as the Court would require to be compensated for, in damages and treat as a nuisance. Or to see whether the injury amounted to such a destruction of the property as to be an irreparable injury, by rendering it unfit for habitation; so as to call for the extraordinary writ of injunction.

The fact of the extent of the damage done to the plaintiff, if any, has not been found by either the jury at the first trial,

or by the Judge at the second trial, we are not to be under-
stood as conceding the right of the Judge to find the fact of
damage or of the surrounding circumstances as he does in the
case now before us.)

Thus we are unable now, to decide the case upon its merits,
and for that reason find there is error in making the injunction
perpetual, in the absence of any finding by a jury of the
amount of damage done to plaintiff.

After taking the papers to write an opinion to this effect, it
occured to me, that water grist mills, and steam grist mills,
were both conducive to the public convenience, and equally so,
according to location, and I was led to the reflection, why
should water grist mills be protected from vexatious litgation,
except where the damages exceed $20 *per annnm*, and steam
grist mills (the number of which has greatly increased of late
years) be left to the rigid rules of the common law in regard to
nuisance ?

Upon looking at Battle's Rev. " Mills " chap. 72, I find sec-
tion 1.   " Every water grist mill, steam mill or wind mill that
shall grind for toll, shall be deemed to be a public mill."   Sec-
tion 2 and 3, apply to these three kinds of mills—then comes
sections applying to water mills only, until section 13, which,
and the seations following, "include *any grist mill* or mill for
other useful purpose ; and prescribe the mode in which any per-
son conceiving himself injured by the erection thereof *must*
(using that word in the sense of *may*, as in the construction of
8 and 9, will and may in respect to assigning breaches in action
on bonds with condition articles 68 and 69)—proceed to seek
relief—" this I am inclined to think puts an end to the present
action ; but as the point is new, and was not adverted to on
the argument, we express no opinion and leave it for the con-
sideration of his Honor in the Court below.

Error.   This will be certified.

PER CURIAM.                              Judgment reversed.