B. M. PRIVETT *v.* J. B. WHITAKER, Sen., and others.

One may be entitled to compensation for the destruction of a house which was lawfully erected, but there can be no vested right to prolong a nuisance after it has been declared such. Therefore, where A had begun to erect a house in the town of G., and shortly afterwards an ordinance was passed by the proper authorities of the town declaring it a nuisance to erect buildings of a certain character in certain portions of the town, and the provisions of the ordinance included A's house, in an action by A against B, the mayor of the town of G., to recover damages for preventing A from erecting the house: *Held,* that the defendant was not liable.

This was a CIVIL ACTION, to recover damages, tried before *Seymour, J.,* at Special Term, 1875, WAYNE Superior Court.

The facts were agreed upon by the parties to the actions, and his Honor gave judgment for the defendant. The facts necessary to an understanding of the case, as decided, are stated in the opinion of the Court.

From the judgment of his Honor the plaintiff appealed.

*Smith & Strong,* for the appellant.
*Faircloth & Grainger,* contra.

RODMAN, J. The material facts of this case are as follows :

On 27th June, 1872, the plaintiff began to erect a wooden building in a certain locality in the town of Goldsboro. At that time, there was no by-law of the town forbidding the erection of wooden buildings in that particular part of the town, or declaring such buildings nuisances, although there was to certain other parts of the town.

On the next day (28th June) the commissioners adopted an ordinance forbidding the erection of wooden buildings within certain limits, which embraced the land of the plaintiff, under a penalty of forfeiting $20 for every week for which the building was allowed to continue.

After the passage of this ordinance, the defendant Whitaker, who was Mayor of the town, directed the police officers to prevent the further erection of plaintiff's building, which they did by going on his land and keeping his workmen therefrom. The other defendants had no other connexion with the trespass, than that they were commissioners of the town, and concurred in adopting the ordinance of 28th June.

Afterwards, viz., on 27th January, 1873, (Private Acts 1872–'73, chap. 3, 376,) an act was passed authorizing the corporation of Goldsboro to prevent the erection of wooden buildings in such parts of said town as they might think proper ; and also to pull down such buildings then existing in certain parts of the town, on making compensation to the owners.

This act cannot affect the present case.

We were not referred to any prior acts respecting the town of Goldsboro. Whatever, for other purposes, may be the character of acts incorporating towns, as public or private, we consider that they are private, so far that a Court is not bound to take judicial notice of their provisions. In fact it would be impracticable to do so.

We assume therefore that Goldsboro was an incorporated town, and that the corporate authority possessed the powers conferred on such bodies by Revised Code, chap. 3, one of which is to pass laws to abate and prevent nuisances, (sec. 15.)

It will be convenient, before considering the defence of the Mayor, to dispose of the case as to his co-defendants, the commissioners. We think it clear that their bare concurrence by their votes in favor of the ordinance above referred to, did not amount to a participation in the alleged trespass. The terms of the ordinance make this too clear to require any discussion.

Now as to the Mayor. His official right to abate or prevent a public nuisance, must be admitted as a general proposition. For the purpose of the present discussion, public nuisances may be divided into four classes :

1. Those which are necessarily and obviously such, as a

fence or building obstructing a highway. These may be abated by the officer who has charge of the highway, either by, or without authority from a Court, and also in like manner, by any individual who is specially injured thereby.

2. Those which are nuisances or not, according to circumstances; such as a stable in a town (*Dargan* v. *Waddell*, 9 Ire. 244) powder or other explosive or easily ignitable substance, stored in a town, &c. Probably this class could not be lawfully abated except under process of law; or at least until the subject of complaint had been found to be a nuisance by some Court, or other competent authority.

3. Those which originally were not nuisances, but afterwards by a change of circumstance become so. Such are mill ponds, powder works, tallow and glue factories, and the like, which if remote from habitations are not considered nuisances, on account of the necessity for them. But from the natural growth of population, and the extension of habitations into their vicinity, they are liable to become such, and when they do, these cannot be abated without an adjudication on their charter at the suit of the sovereign; but at his instance, they may be abated after any length of innocent or even noxious enjoyment. No length of time will legalize a nuisance. *Bell* v. *Blount*, 4 Hawks, 384; *Eason* v. *Jerkins*, 2 Dev. Eq. 38; *Attorney General* v. *Lea*, 3 Ire. Eq. 301; *Wilder* v. *Strickland*, 2 Jones, Eq., 386.

Where the erection of a nuisance is enjoined upon a mere threat, or intention to erect it, the party enjoined has no right to any compensation on account of being forbidden to make an unlawful and injurious use of his property.

The same maxim applies when an action will, whenever completed, evidently come within the first class. The party is entitled to no compensation for his loss in consequence o having done or contemplated an unlawful and injurious act. No question of compensation can arise upon the second class of cases, because the party can always so order his business

that it will not be a nuisance. I do not know of any case which holds that a party is entitled to compensation upon the abatement of a nuisance of the third class. There may be cases in which he would be, and intimations to that effect may be found in the cases cited from our own reports. The general rule however is to the contrary, for the erection in this class of cases, becomes a nuisance in the natural course of things, which might, or ought to have been foreseen by the party.

4. The fourth class, under which the present case comes, is where the erection was not originally a nuisance, and does not become so either by mismanagement or in the foreseeable course of events, but which being originally lawful, becomes a nuisance by force of the ordinance of the corporate authorities of a town, which although authorized and presumably just, is yet arbitrary, in the sense, that its enactment depends upon the opinion and discretion of the corporate authorities. I do not know of any authority on the point, but this case is obviously different, as to the right to compensation upon an abatement, from any case falling within the preceding classes. The right of the corporate authority seems to fall, not so much within the common law power to abate a nuisance, as within the power of eminent domain, by which a State takes private property, when the public convenience requires it. This discussion has arisen so naturally out of the facts of this case, that it was almost impossible to avoid it. But no decision on the question of the plaintiffs' right to compensation, is necessary in this case, because this action is not against the town which adopted the damaging ordinance, but against the individual whose official duty it became to enforce it. The trespass of the Mayor consisted in enforcing the ordinance, not by abating anything existing, but by prohibiting the finishing of a building which had been declared a nuisance by competent authority. One may have a right to compensation for the destruction of what he has put up, which was lawful when it was put up; but there can be no such thing as a vested right to prolong and aggravate a nuisance, after it has been

declared such. The addition to the erection of plaintiff after June 28th, was a nuisance which the Mayor would have been justified in abating, and *a fortiori*, which he was justified in preventing.

PER CURIAM. Judgment affirmed.