N. H. BERGER v. R. H. SMITH and J. D. SMITH.

(Filed 16 October, 1912.)

1. Injunction—Nuisance—Sawmills—Evidence—Burden of Proof.

　　The operation of a sawmill is not a nuisance *per se,* and the erection of one will not be enjoined unless it be proved by the complaining party that it will be, in fact, a nuisance under the particular circumstances of the case.

2. Same—Conjecture—Averments.

　　When the erection of a sawmill is sought to be enjoined, the proof that it will be a nuisance if operated must be shown by evidence which amounts to more than a conjecture; and unless the facts are made to appear from which the courts may see that its operation, under the circumstances shown, will amount to a public or private nuisance, the injunction will be denied, and the mere averment of the plaintiff to sustain his contention is insufficient, the question being one of law upon the facts ascertained.

3. Injunctions — Nuisance — Sawmills — Cities and Towns — Ordinances—Evidence—Bona Fides.

　　In proceedings to enjoin the erection of a sawmill on lands adjoining those of plaintiff, whereon he resided, upon the alleged ground that its operation would affect the comfort of the plaintiff's family and the value of his property, it is competent to show that the plaintiff had operated a cotton gin nearer to his

residence than the proposed mill would be, and that he had procured an ordinance prohibiting other sawmills from being built within the corporate limits of the town, wherein he operated one, upon the question as to whether the plaintiff was actually apprehensive of the injury, or whether the ordinance was passed in his interest and at his instance to destroy competition.

4. Injunction—Public Nuisance—Special Injury.

A complaining party cannot maintain an action for the commitment of a public nuisance without showing some special injury peculiar to himself, and when such is not shown an injunction will not issue.

5. Cities and Towns — Public Nuisance — Sawmills—Courts—Void Ordinances—Injunctions—Remedy at Law.

An ordinance declaring the operation of a sawmill within its limits to be a nuisance, which in fact is not one, does not deprive the court of its authority to pass upon the question; and it appearing in this case that the mill in question, the erection of which is sought to be enjoined, would not be a nuisance *per se*, and it not appearing that it would be one in fact, but that the ordinance was passed at the instance of the complaining party to prevent competition, it is held that the injunction should not issue, and that the party be left to his action for damages at law, should it hereafter appear that he has sustained any.

APPEAL by plaintiff from *Peebles, J.,* at November Term, 1911, of WAYNE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*M. T. Dickinson and Winston & Biggs for plaintiff.*
*Langston & Allen for defendant.*

WALKER, J. This case was before us at a former term, and is reported in 156 N. C., 323. We then held that the sawmill which it was alleged the defendant was about to erect in violation of the ordinance was not a nuisance *per se,* and we remanded the case in order that it might be submitted to a jury to ascertain if it was a nuisance in fact. At 'the trial, the court, upon plaintiff's evidence, ordered a nonsuit, and plaintiff appealed. It appeared by the evidence that the mill had not been built, but that defendant only intended to build it, and

plaintiff testified that its operation, if it was built, "would be annoying to his family by reason of noise, smoke, and flying trash, and would expose his property to fire." He also stated that it would depreciate the value of his property and other property in the same block. There was more evidence to the same effect.

There are some things which, in their nature, are nuisances and which the law recognizes as such. There are others which may or may not be so, their character, in this respect, depending on circumstances. This case would seem to fall directly within the principle as applied in *Dorsey v. Allen,* 85 N. C., 358. The facts of the two cases are almost identical, and, in substance, they are sufficiently alike to make that case a controlling authority. In the *Dorsey case* plaintiff sought to enjoin the erection of a planing mill and cotton gin, which had already been begun, and he alleged, as does the plaintiff in this case, that the operation of the mill and gin, when finished, would render their dwellings not only uncomfortable, but unfit for habitation, by reason of the noise of the machinery; that they would be exposed to increased perils from fire, and that their property would be greatly impaired in value. The Court, approving the order of the judge refusing an injunction to stop the progress of the work in its early stages, as being unnecessary for the protection of the plaintiff, said: "Before operations were commenced there was no increased danger from fire, and no disturbing noise made requiring judicial interference, and the relief could be obtained after the results were definitely ascertained, if the plaintiffs should be found entitled to it. The nuisance, if incidental and not necessary to the proper conduct of the business, or inherent and inseparable from it, could then be abated, and the defendant's knowledge of the pending suit would take from him all just cause of complaint when it should be so adjudged. But it would be an unwise exercise of power upon such uncertainty as to the practical working of an undertaken enterprise and its consequent effects, for the court to interpose and prevent its being carried out, with its promises of substantial and lasting benefits to a community, because of the discomfort and inconvenience a single family or a small num-

ber of persons may experience from its presence in their vicinity, so inconsiderable when weighed in the scale with the public interests. While it is true that a business lawful in itself may become so obnoxious to neighboring dwellings as to render their enjoyment uncomfortable, whether by smoke, noxious and offensive odors, noises, or otherwise, as to justify the protecting arm of the law, yet there must be the ascertained and not probable effects apprehended. When the anticipated injury is contingent and possible only, or the public benefit preponderates over the private inconvenience, the court will refrain from interfering."

The following authorities support the same view: "Where an injunction is asked to restrain the construction of works of such a nature that it is impossible for the court to know, until they are completed and in operation, whether they will or will not constitute a nuisance, the writ will be refused in the first instance. Nor in such a case will the motion for an interlocutory injunction be allowed to stand over until the work is so far executed that its character may be determined. It is proper, however, under such circumstances to dismiss the bill without prejudice to any further application which plaintiffs may think themselves entitled to make." 1 High on Injunctions (4 Ed.), sec. 743. "A court of equity will grant injunctions to prevent undoubted and irreparable mischief; and it may thus act on the application of individuals, not only in the case of a private nuisance, but where the individuals suffer special injury, in the case of public nuisances also. But the courts will only exercise this power in a case of necessity, where the evil sought to be remedied is not merely probable, but undoubted. And it will be particularly cautious thus to interfere where the apprehended mischief is to follow from such establishments and erections (as, for instance, a public mill) as have a tendency to promote the public convenience." Per *Gaston, J.,* in *Barnes v. Calhoun,* 37 N. C., 199. This was said by the learned judge after confessing that the strong leaning of the Court's opinion was with those who thought that the apprehensions of the plaintiff were not without foundation. *Ellison v. Commissioners,* 58 N. C., 57, furnishes another illustration of the principle. The plaintiff there sought to enjoin the laying off of his land for a ceme-

tery. The Court strongly intimated that a cemetery was not a nuisance *per se,* and would not be either a public or private nuisance in fact, if it was properly arranged and sufficiently drained and in other respects carefully supervised. If it threatened or proved to be actually deleterious to the health of the people of the vicinity, the case would be different. The word "nuisance" was held, in its legal sense, to be confined to such matters of annoyance as the law recognizes and for which it gives a remedy by way of redress or abatement, or, in a proper case, by restraining process. "The unpleasant reflections," said *Judge Manly,* "suggested by having before one's eyes constantly recurring memorials of death is not one of these nuisances. Mankind would, by no means, agree upon a point of that sort, but many would insist that suggestions thus occasioned would, in the end, be of salutary influence. The death-head is kept in the cell of the anchorite, perpetually before his eyes as a needful and salutary monitor. The nuisance which the law takes cognizance of is such matter as, admitting it to exist, all men, having ordinary senses and instincts, will decide to be injurious." "The subject of nuisances, private as well as public, has undergone much discussion in the courts during the past few years. Amongst other principles established, is one which we think definitive of the rights of the parties now before the Court. It is settled in respect to private nuisances, that where the nuisance apprehended is dubious or contingent, equity will not interfere, but will leave complainant to his remedy at law," citing Drewry on Injunctions, 242; *Barnes v. Calhoon, supra; Attorney-General v. Lea,* 38 N. C., 301; *Simpson v. Justice,* 43 N. C., 115.

In *Attorney-General v. Lea, supra,* the Court held: A court of equity will refuse to interfere by injunction in the case of the erection of a milldam, unless it is shown that it will be a public nuisance, or, if it will be a private nuisance only to an individual, unless it manifestly appears that so great a difference will exist between the injury to the individual and the public convenience as will bear no comparison, or that the erection of the dam will be followed by irreparable mischief. The Court refused an injunction against the erection of a turpentine

160—14

distillery in *Simpson v. Justice, supra,* because the nuisance
was not certain, but only contingent and required the fact of
nuisance to be first established.   It was said therein that the
jurisdiction of the court to enjoin in the case of private nui-
sance is of recent origin, and is always exercised sparingly and
with great caution, because if, in fact, there be a nuisance, there ·
may be an adequate remedy at law, depending somewhat, of
course, upon the nature of the nuisance, citing *Attorney-General
v. Nichols,* 1 Ves., 338, and an anonymous case before *Lord
Thurlow* in 1 Vesey, Jr., 140.   There is an obvious difference,
said *Judge Pearson,* between a thing which is a nuisance in
itself and one which may or may not be a nuisance according
to the manner in which it is used; a turpentine distillery and
like structures being of the latter class.   If they make noises
or generate "smoke, blacks, and soot," or tend to diminish prop-
erty values, those facts must appear by proof and not be left
to mere conjecture.   No one should be prevented by a resort
to this extraordinary process of the court, on the part of his
neighbor, with nothing more than a supposed grievance, from
engaging in an enterprise which is not only lawful, but bene-
ficial to the public, because of the unfounded fear or apprehen-
sion of the plaintiff that the value of his property may be im-
paired or that he may suffer some inconvenience from smoke
and noise.   His appeal for the intervention of the "strong and
omnipotent arm of the court" is answered by *Chief Justice
Pearson* in *Hyatt v. Myers,* 73 N. C., 232: "If a man, instead of
contenting himself with the quiet and comfort of a country resi-
dence, chooses to live in a town, he must take the inconvenience
of noise, dust, flies, rats, smoke, soot, and cinders, etc., etc.; and
he cannot, in law, complain of the owner of an adjoining lot
by reason of smoke, soot, and cinders caused in the use and
employment of his property: *Provided,* the use of it is for a
reasonable purpose, and the manner of using it such as not to
cause any unnecessary damage or annoyance, and he takes all
prudent precautions to avoid annoying his neighbors; and even
then neither a court of law nor a court of equity will treat it
as a nuisance unless the damage is material, so as to exceed
what the owner of property ought to be allowed to put upon

the owner of property adjoining, in the reasonable enjoyment
of his own property, under the maxim, *'Sic utere tuo ut alienum
non lœdas,'* which depends upon the circumstances of the case.
'Does the nuisance arise from an establishment made for per-
sonal gratification or mere private profit? Or does it promote
the convenience of the public?' What is the extent of the dam-
ages? If slight, the courts of law may treat it as a nuisance,
and give a remedy in damages; if great and irreparable, so
that compensation cannot be made, then a court of equity will
interfere by injunction. These general principles are announced
and discussed in *Dargan v. Waddell,* 31 N. C., 244, a case show-
ing when courts of law give relief, and in *Eason v. Perkins,* 17
N. C., 38, a case showing when courts of equity will interfere
by the extraordinary writ of injunction.

A good legal definition of an actionable nuisance will be found
in *Dargan v. Waddell, supra:* "A stable in a town lot is not,
like a slaughter-pen or a hog-stye, necessarily or *prima facie*
a nuisance. But if it be so built, so kept, or so used as to de-
stroy the comfort of persons owning and occupying premises
and impairing their value as places of habitation, it does thereby
become a nuisance. If the adjacent proprietors be annoyed by
it in any manner which could be avoided, it becomes an action-
able nuisance, though a stable in itself be a convenient and
lawful erection." See, also, *Wilder v. Strickland,* 55 N. C.,
386; *Privett v. Whitaker,* 73 N. C., 554, in which *Justice Rod-
man* classifies nuisances. Joyce in his treatise on Nuisances,
sec. 102, states the same general rule: "The fact that a busi-
ness which is lawful may become a nuisance after it has been
commenced is not a sufficient ground for enjoining the same.
It must clearly appear to the satisfaction of the court that it
will become a nuisance. So it has been said in this connection:
'Before a court of equity will restrain a lawful work from which
merely threatened evils are apprehended, the court must be
satisfied that the evils anticipated are imminent and certain to
occur. An injunction will not issue to prevent supposed or
barely possible injuries.' "

All the authorities tend to the conclusion that plaintiff must
offer tangible proof of the fact of nuisance, when there is no

nuisance *per se,* before the court will interfere to stop the erec-
tion of a building or the prosecution of a lawful business,
especially if it will be beneficial to the public, and, in the latter
case, not unless the private injury is greater in proportion than
the public benefit.   The court will not act upon speculative
proof, or such as furnishes ground only for a conjecture.

The plaintiff has not brought his case within these princi-
ples, so as to induce the court to interfere in his behalf.   We
have said, in this case, at the former term, that the mill in ques-
tion is not a nuisance *per se,* and the authorities, as we have
shown, sustain that view.   We also held that he must prove
that it would be, in fact, a nuisance.   This he has not done.   It
is evident that plaintiff, when testifying, was merely giving his
opinion or conjecture as to what might occur should the mill
be erected.   In other words, he is simply declaring that to be
a nuisance *per se* which the law says is not such a nuisance.
How can he know, at this time, whether the mill, if properly
built and carefully operated, will injure him in such a way as
to be a legal nuisance?   His fears and apprehensions of injury
may be purely imaginary and utterly groundless, for it is pos-
sible, or even probable, that the defendant can so construct and
operate it as to avoid any substantial injury to the plaintiff.
It appears, also, that plaintiff has built and operated a cotton
gin since the dwellings were erected, within fifty yards of them,
which is nearer than the mill will be, and yet no complaint has
been made against it.   There is also strong proof that the ordi-
nance was procured at the instance of the plaintiff for the pur-
pose of destroying the competition of defendant, his business
rival, with him, and we may add, that it also tends strongly, if
not conclusively, to show that the ordinance was adopted, not to
protect the public or individuals against a threatened nuisance,
but in furtherance of plaintiff's scheme to thwart the efforts of
his business competitor and thus cripple him.   Although this is
not to be taken as conclusive against plaintiff's supposed equity,
it is a matter which might be considered and turn the scale in a
doubtful case, and tends, certainly, to show that his apprehen-
sions of injury are either not entertained at all or are greatly
exaggerated.   *Ellison v. Commissioners, supra.*   As we said in

*Durham v. Cotton Mills,* 141 N. C., 615: "When an injunction is sought to restrain that which it is apprehended will create a nuisance, the proof must show that the apprehension of material and irreparable injury is well grounded upon a state of facts from which it appears that the danger is real and imminent." There is no proof in this case which amounts to more than a mere guess that the mill stack will emit an unusual quantity of smoke or cinders, or that the mill will be so constructed as to produce disagreeable noises, or that it will seriously impair the value of adjacent property. It did not occur to the plaintiff while operating his own gin, under like circumstances, that such a result would follow, and his fear only arose, as suggested, when his apprehension of a dangerous rivalry in business quickened him into activity, and he became suddenly alarmed about the consequences of something which he had been substantially doing himself for about ten years.

If the fears, real or assumed, of the plaintiff, as to the effects of the proposed mill upon the comfort of his family and the value of his property be realized, he will not be without redress. The courts of law will be open to him, and he will go into them with more grace, having by these proceedings put the defendant on his guard. *Wilder v. Strickland, supra.*

We have not made any special reference to the ordinance, as we hold that there is no sufficient evidence, in law, of any nuisance in fact, and this is the question we ordered to be tried below. As in harmony with the view then taken of the case by this Court, we may add these authorities: Judge Dillon says, with reference to the power of a municipal corporation to pass ordinances for the suppression or abatement of nuisances: "Such powers, conferred in general terms, cannot be taken to authorize the extrajudicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such." 1 Dill. Mun. Corp. (4 Ed.), secs. 95 and 374. And in *River Rendering Co. v. Behr,* 77 Mo., 91, we find the following safe and conservative rule stated: "We do not deny that the General Assembly may confer upon municipal authorities the power to abate nuisances, and to declare what shall be deemed nuisances, but the latter power cannot be so absolute as to be

beyond the cognizance of the courts to determine whether it has been reasonably exercised in a given case or not," citing *Yates v. Milwaukee*, 77 U. S., 10 Wall., 497, 19 L. Ed., 984, in which the Supreme Court of the United States, through *Mr. Justice Miller*,' said: "But the mere declaration by the city council of Milwaukee that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance, unless it in fact had that character."

The ordinance in this case was manifestly directed against this particular building, and had the effect, if not intended, to prevent the defendant, by the erection of his mill, from injuring the business of his local rival; but even if intended to promote the public welfare and safety, it has not been shown to be a nuisance, and this sustains the nonsuit and the order dissolving the injunction, whatever the ground of his Honor's decision may have been. This was not an effort of the commissioners to establish fire limits, conceding that they have the power, under the town charter, or inherently, to do so, but to declare that to be a nuisance which is not one *per se*, nor in fact, so far as the proof tends to show.

We do not question the power of the municipal board to enact ordinances prohibiting the erection of dangerous buildings in proper cases. But any ordinance may be declared void if, in itself, or because of the peculiar facts and circumstances which gave rise to its adoption, or with reference to which it must be enforced, it will be unreasonable and oppressive in its operation. That is what, in substance, we formerly decided in this case. 156 N. C., 323.

Plaintiff cannot maintain an action against defendant for committing a public nuisance, unless he shows special injury peculiar to himself, and this he has not done. High on Injunctions (4 Ed.), secs. 757, 761, 762, 764, and 828. We have not overlooked the fact that defendant has built his gin and mill on an adjoining lot, about the same distance from plaintiff's lot as the other mill, if erected, would have been, and there has been no word of protest against it, so far as appears.

This case is distinguishable from *Raleigh v. Hunter*, 16 N. C., 12; *Vickers v. Durham*, 132 N. C., 880, and *Cherry v. Williams*,

147 N. C., 452, in which the public health was threatened by the building of a milldam, or a sewage disposal plant, or a hospital for the treatment of tuberculosis, where the evidence was of a satisfactory and tangible character, and created strong probability that the act proposed to be enjoined would, if committed, constitute a nuisance, and the injury was imminent. Our case belongs to a class quite different, and represented by *Simpson v. Justice,* 43 N. C., 115; *Hyatt v. Myers,* 71 N. C., 271 (*s. c.,* 73 N. C., 232); *Dorsey v. Allen, supra; Hickory v. R. R.,* 143 N. C., 451, and others to be found in our reports, in which the injunction was prayed against buildings or enterprises of great public utility or benefit. The distinction between the two classes is clearly shown by *Justice Hoke* in *Cherry v. Williams, supra.*

The record discloses no error in the case.

No error.