Manly, J.
 

 The subject of nuisance^, private as well as public, has undergone much discussion in the courts during the past few years. Amongst other principles established, is one, which we think, definitive of the rights of the parties now before the Court.
 

 It is settled in respect to private nuisances, that where the nuisance apprehended, is
 
 dubious
 
 or contingent, equity will not interfere, but will leave complainant to his remedy at law. See Drewry on Injunctions, 242;
 
 Barnes
 
 v.
 
 Calhoon,
 
 2 Ire. Eq. 199;
 
 The Attorney General
 
 v. Lea, 3 Ire. Eq. 205, and
 
 Simpson
 
 v. Justice, 8 Ire. Eq. 115.
 

 A consideration of the subject-matter of this complaint, as disclosed by the pleadings, leads us to the conclusion, that a place of interment of the dead, is not necessarily a nuisance, but that this must depend upon the position and extent of the grounds, and especially upon the manner in whieh the burials are effected. The cemeteries, which have been established near the principal cities and towns of our country, (and which it is the commendable purpose of the Washington corporation to imitate) have sprung from the idea that open space, free ventilation, and careful sepulture, not only prevent such
 
 *59
 
 places from becoming nuisances, but make them attractive and agreeable .places of resort. The dead must be disposed of in some way, and burial in the earth, suggested by the received revelation of man’s origin and destiny, is that most generally resorted to. The commissioners of the town of Wash-ton have selected a spot outside of the town, in obedience to the act of Assembly, and the vote of the citizens, and, so far as we can perceive, it is.fitting and appropriate for that pur.pose.
 

 If the grounds be arranged and drained, and the burial of the dead be conducted as elsewhere in such establishments, we incline decidedly to the opinion, it will not be a nuisance, either public or private. The word nuisance is, of course, used here in its legal sense, and is confined to such matters of annoyance, as the law recognizes and gives a remedy for. The
 
 wvpleasaivt reflections
 
 suggested by having before one’s eyes, constantly recurring memorials of death, is not one of these nuisances. Mankind would, by no means, agree upon a point of that sort, but many would insist that suggestions thus occasioned would, in the end, be of salutary influence. The death-head is kept in the cell of the anchorite, perpetually before his eyes as a needful and salutary monitor. The nuisance, which the law takes cognizance of, is such matter as, admitting it to exist, all men, having ordinary senses and instincts, will decide to be injurious.
 

 The plaintiff’s right to the redress he seeks, is put upon one other point, which is, that the cutting away the forest growth, from the slope of land owned by the defendants, will expose plaintiff’s residence to unobstructed currents of
 
 miasma
 
 from the marshes south of him.
 

 This position is too broad to be tenable, for it goes to the extent of empowering neighbors to prevent each other from reducing to cultivation all marsh lands similarly situated. The first effects of the process of preparing such lands for use, is probably injurious to health. By exposing them to the action of the sun, the exciting causes of disease are more abundantly developed, and consequently, disease is more frequent.
 
 *60
 
 But the ultimate effects are otherwise. Drainage and cultivation is healthful; and lie who ditches and dries, the fertile low grounds of the country, is a public benefactor. This point, though made in the pleadings, was not relied upon in the argument, and we dismiss it without further remark.
 

 There is a fact, which we think, weakens the equity of the plaintiff’s bill. He bought and settled on his land after defendants had contracted for theirs, the purpose for which they wished it, being known to him. Now, although this is not taken to be conclusive against the plaintiff’s equity, it is matter which ought to weigh something, and turn the scale in a doubtful case. What he complains of as a nuisance, has not been obtruded upon him, but he has met it half way. Are we not at liberty to infer his apprehensions of injury, are either not entertained at all, or are greatly exaggerated.
 

 The plaintiff has succeeded to all the rights of his vendor, when these .rights are ascertained. In defining them, it is proper for us to consider how, and through whose agency the transaction occurred, out of which they sprung.
 

 The plaintiff sought the contract, and he ought not to invoke the Court to protect him from what he says are the
 
 necessary
 
 consequences of it. He cannot rightfully complain, if equity decline interferring to remove or restrain defendants, and thus prevent the effects of the contact. He ought, at at least, before he asks for such interference, to establish at law the injury he alleges.
 

 Public cemeteries, for the orderly and decent sepulture of the dead, are necessary requirements for all populous towns. In fixing sites for them private must yield to public convenience, and the courts will be particularly careful and not interfere to prevent such establishments, unless the mischief be undoubted and irreparable. Our conclusion is, that
 
 bwying the dead
 
 in public cemeteries, is not necessarily a nuisance, but might become so by careless and improvident modes of interment. It is, at most, a doubtful or contingent nuisance, and in‘such cases, the courts of equity will not interfere to pre
 
 *61
 
 vent, but will leave complainants to establish the nuisancé by an action at law, when it shall arise.
 

 The pleadings satisfy us that plaintiff voluntarily placed ■himself by the side of the grounds selected for this establishment, and thus put himself in contact with an apprehended .nuisance.
 

 And, therefore, the Court will not interfere to restrain defendants in the use of their grounds for the purpose intended, unless the nuisance be clear, or unless, as stated before, it shall be established at law.
 

 Having disposed of the interlocutory order appealed from, in favor of the defendants, upon it merits, we deem it unnecessary to notice the objection to the frame of the bill in making the parties.
 

 Let the order appealed from be reversed, and the injunction be dissolved, and let this be certified to the Court below.
 

 Pee CueiáM, - Decretal order reversed.