LUTHER H. CHERRY et al. v. JOHN ROY WILLIAMS.

(Filed 22 April, 1908).

1. **Nuisance—Hospitals—Menace to Health—Evidence Sufficient—Restraining Order.**

When it is made to appear by plaintiff's evidence that a hospital is about to be erected for the purpose of treating tuberculosis and other contagious or infectious diseases upon lands adjacent to plaintiff's, in the residential portion of a thickly settled vicinity, so as to import serious menace to the health of plaintiff's family and that of the owners and occupants of adjacent property, a restraining order upon his application should be continued to the hearing.

2. **Same—Evidence in Reply—Insufficient.**

Supporting evidence offered in reply is not sufficient which is general in its terms and made without reference either to the special locality or to the special manner in which the particular hospital is to be constructed and carried on.

3. **Same—Actual Construction Not Restrained.**

The use of a hospital for the treatment of diseases so as to be a serious menace to the health of adjacent owners and occupants may be restrained, while the actual construction, without the use, will not be.

ACTION heard on return to a temporary restraining order before *Webb., J.,* at January Term, 1908, of GUILFORD.

The complaint alleged and there was evidence tending to show:

1. That the plaintiffs are residents and citizens of the county and State aforesaid, and reside on Chestnut Street, in the city of Greensboro.

2. That the defendant, Dr. John Roy Williams, is a practicing physician, residing in said city, on said street, and is the owner of a lot fronting fifty feet in width on said Chestnut Street and running back a distance of something over two hundred feet in depth from said street.

3. That the defendant, John Roy Williams, is now erecting on the said lot owned by him a building to be used as a sanatorium for the treatment of tuberculosis and other infectious and contagious diseases, and has also, as these plaintiffs are advised and believe, entered into a contract for the erection of a number of small cabins or pesthouses for the treatment of tuberculosis and other diseases, and he is now engaged in the construction and erection of said buildings on said lot for the treatment of tuberculosis and other diseases aforesaid for his individual gain.

4. That the plaintiff Luther H. Cherry is the owner of a lot adjoining the said lot of the said Williams, of the same size, between which there is no obstruction or protection, and that the said Cherry, who has a wife and children, lives within one hundred feet of the said lot on which are being erected the buildings aforesaid; that the plaintiffs N. J. Bakke, J. W. Case, G. A. Hood, J. T. Wade, W. B. Young and others are also owners of lots on the same street, located within a few feet of the said lot on which the said Williams is erecting the buildings aforesaid.

5. That the said lot of the said Williams is located in a thickly populated section of the city and on the said street where not only plaintiffs but a large number of other people

reside, and that the erection and use of said buildings for the purposes aforesaid are in violation of the rights of the plaintiffs, and if permitted to be erected and completed and used for the purposes aforesaid will work irreparable and permanent injury and loss to the plaintiffs.

6. That the plaintiffs are advised and believe that the disease or diseases for the treatment of which said buildings are being erected are infectious and contagious and a menace to the public health, and if defendant is permitted to use said buildings for the treatment of said disease or diseases the health of the plaintiffs and the public will be endangered thereby, and that consequent loss of health and life will follow the construction and use of said buildings for the treatment of such disease or diseases as the defendant has determined to treat in said buildings.

7. That the plaintiffs are suffering or about to suffer not only irreparable injury in the matter aforesaid, but they are also forced to sustain irreparable and permanent loss by the depreciation of their property located in close proximity to the said lot by reason of the location of said buildings on the said lot of defendant for said purposes, and by reason of the further fact that the defendant is, as plaintiffs are advised and believe, insolvent and utterly unable to respond in damages for the injury and loss which they have already sustained and will continue to sustain.

8. That if the defendant is permitted to complete said buildings and to use them for the purpose of treating tuberculosis and other diseases the plaintiffs and their neighbors who reside on the same street will be made to suffer loss and permanent injury, unless the court intervenes for their protection and restrains the defendant from the continuance of his work in the erection of said buildings, and that the private injury resulting therefrom is greatly in excess of any benefit to be derived therefrom.

Defendant, admitting his purpose to construct and use

buildings for the treatment of consumptives, and at the place indicated, offered a large amount of evidence, including affidavits of specialists eminent in their profession and in the treatment of tuberculosis in hospitals and otherwise, to the effect that "a sanatorium for the treatment of consumptive patients located in the city of Greensboro, properly maintained and conducted, would not be a menace to the health of the community in which it is situated nor to the public health; that such sanatoriums are conducted in large and populous cities all over the country where the climate is suitable for the patients, and that experience has shown that such sanatoriums are not a menace to the public health, but rather a benefit"; that the proposed locality is not thickly populated, and consumption is not a contagious or an infectious disease, and that defendant is qualified to conduct the proposed sanatorium properly and intelligently.

On considering the evidence offered by plaintiffs and defendant, the restraining order was continued to the hearing, in terms as follows: "This cause coming on to be heard, and being heard upon the complaint and affidavits herein filed, and it appearing to the court from the complaint and affidavits of the plaintiffs in this cause that the defendant is now erecting on the lot described in the complaint buildings to be used for the treatment of tuberculosis and other infectious and contagious diseases, and that said buildings are a menace to the public health and threaten to cause irreparable and permanent injury and loss to the plaintiffs; and, further, that the plaintiffs are entitled to have the defendant, John Roy Williams, temporarily restrained from the continuance of his work in the erection of said buildings." It was ordered that the restraining order heretofore issued be continued to the hearing. Defendant excepted and appealed.

*G. S. Bradshaw, King & Kimball* and *Douglas & Douglas* for plaintiffs.
*Stedman & Cooke* for defendant.

HOKE, J., after stating the facts: The authorities in this State will uphold the position that, when there are facts in evidence which give good reason to believe that the owner of property in the residential portion of a thickly settled vicinity is about to devote it permanently to a use which imports serious menace to the health of the owners and occupants of adjacent property, such user should be restrained until the facts on which the rights of the parties depend can be properly determined at the final hearing. The conditions suggested, if established, come well within the definition of an actionable nuisance, and if there is a well-grounded apprehension that neighbors will be unreasonably exposed to serious danger from a disease of the nature of consumption the injunction should be continued to the hearing. The injury threatened in such case would be irreparable.

As said by *Justice Walker,* in *Durham v. Cotton Mills,* 141 N. C., 615, "When injunction is sought to restrain that which it is apprehended will create a nuisance, the proof must show that the apprehension of material and irreparable injury is well grounded upon a state of facts from which it appears that the danger is real and immediate."

Courts are properly very reluctant to interfere with the enjoyment of property by the owner, and there is a line of cases in this State, and they are in accord with established doctrine, to the effect that when the owner of the property is about to engage in an enterprise which may or may not become a nuisance, according to the manner in which it may be conducted, courts will not usually interfere in advance to restrain such an undertaking, and especially when the apprehended injury is "doubtful or contingent or eventual"; but these decisions will very generally be found to obtain in causes where the apprehended injury was threatened by reason of some industrial enterprise which gave promise of benefit to the community, affecting rather the comfort and convenience than the health of adjoining proprietors and giving indication

that adequate redress might in most instances be afforded by an award of damages, as in *Simpson v. Justice,* 43 N. C., 115; *Hyatt v. Myers,* 71 N. C., 271; *Hickory v. Railroad,* 143 N. C., 451, to which we were referred by counsel for defendant. But, so far as we have examined, whenever this principle has been apparently applied with us to cases which threatened serious injury to health, and injunctive relief was denied complainant, it will be found either that there was some defect in the proof offered by plaintiff or such proof was successfully controverted by defendant, or there were other conditions present which required the application of some other principle than that which defendant here invokes for his protection. Thus, in *Ellison v. Commissioners of Washington,* 58 N. C., 57, bill in equity to restrain the placing of a cemetery so as to threaten the healthfulness of plaintiff's dwelling, injunction was refused on the ground that the evidence did not tend necessarily to establish that the proposed cemetery would bring about the apprehended result, and further on the ground that "plaintiff had voluntarily put himself by the site of the ground selected for this establishment." And accordingly in the very next volume of the reports (*Clark v. Lawrence,* 59 N. C., 83) it was said that, where it was made to appear that a proposed cemetery would endanger the life and health of an adjoining owner, an injunction should be granted, and *Judge Battle,* delivering the opinion of the Court and referring to *Ellison v. Commissioners, supra,* said: "The same principle which would excite into activity the restraining power of the Court, where the health of the community or of an individual member of it is in danger of being destroyed or impaired by a mill pond, will be equally ready to interpose its protection when a similar danger is threatened from the establishment of a cemetery in a city or town or very near the dwelling house of a private person. * * * This, we think, was recognized in the case of *Ellison v. Commissioners of Washington, supra,* though the decision in

that case, on account of its peculiar circumstances, was adverse to the application for the injunction." And in *Vickers v. Durham,* 132 N. C., 880, being a case for injunction against discharging sewage of the city of Durham on property so as to threaten the health of complainant's family, relief was denied in part on the ground that the testimony of the complainant failed to controvert that of defendant as to the efficiency of the disinfecting plant of the city. And the fact that the present right to dump the sewage was of great public importance was also allowed weight in the conclusion arrived at. Thus *Montgomery, J.,* for the Court, said: "So it appears from everything in the case that the complaint of the plaintiff is based solely upon an apprehension of injury. None of the witnesses of the plaintiff professed to know anything concerning the plant for disinfection or the methods of purification. The plaintiff is simply afraid that he may be injured by something of which he has no theoretical knowledge and with which he has no practical experience. On the other hand, the affidavits filed by the defendant are made by prominent and experienced scientists, and one of them has in several instances seen the practical results of the plan proposed by the city of Durham to dispose of its sewage. In *Dorsey v. Allen,* 85 N. C., 358; 39 Am. Rep., 704, this Court said: 'When the anticipated injury is contingent and possible only, or the public benefit preponderates over the private inconvenience, the Court will refrain from interfering.' We think that still the correct rule, though there may be and are some expressions to the contrary in *Marshal v. Commissioners,* 89 N. C., 103. In addition to what we have said above, the great importance to the city of Durham of the public work which it is trying to carry out would make us hesitate before we would interfere by injunction." And in *Durham v. Eno Cotton Mills,* 141 N. C., 615, *Walker, J.,* refers to the failure on the part of the complainant to offer available evidence which would have gone far towards establishing the injury complained of if it had been in his favor.

But where the special conditions referred to, and to some extent relied upon in these cases, do not exist, and there are facts in evidence which tend to establish with reasonable certainty that there is a well-grounded apprehension of irreparable injury to complainant's health by reason of the threatened and unwarranted use of adjacent property, the decisions in this State are to the effect that such user should be restrained till the hearing. Thus, as far back as 4 Hawks, in the case of *Bell and Inhabitants of Tarboro v. Blount,* 11 N. C., 384, this being a bill to prevent the erection of a mill dam, on the ground that there was reasonable certainty that such a structure threatened the health of citizens living near, the Court held "that, while the object of a bill is to prevent the erection of that which will be productive of injury serious and irreparable if erected, this Court will pass upon the question and interpose its authority to prevent the threatened injury." And in *Citizens of Raleigh v. Hunter,* 16 N. C., 12, this being a bill to enjoin the maintenance of a mill dam, on the ground that it injuriously affected the health of the inhabitants of the town, it was held that the suit was well brought, and *Henderson, J.,* delivering the opinion of the Court, said: "Where the right infringed is of a doubtful character, as the right of view over another's ground, there a court of equity will order the right to be established at law before it will grant an injunction, in the meantime staying the owner of the land from closing up the view; but here the rights infringed upon are of a character not in the least doubtful—the health and comfort of the relators and others for whom they act."

In *Eason v. Perkins,* 17 N. C., 38, the principle of these last two cases was affirmed, and that case was distinguished on the ground that it appeared that the mill in question was a great public benefit, and as the injury was only threatened to one family the private right under the special circumstances there prevailing should yield to the public good. And a similar decision was made for like reason in *Daughtry v.*

*Warren,* 85 N. C., 136. Again, in *Clark v. Lawrence,* 59 N. C., 83, it was held that when it was made to appear with reasonable certainty that the health of adjacent residents would be affected by the erection of a cemetery equity would interfere, though in that case a preliminary restraining order was refused on the ground that the evidence did not come up to the requirements so as to bring the case within the principle.

The doctrine announced in these cases in our own Court is supported by well-considered decisions in other jurisdictions. *Gilford v. Hospital,* 1 N. Y. Supp., p. 448; *Baltimore v. Fairfield Imp. Co.,* 87 Md., 352; *Coke v. Burge,* 9 Ga., 425; *Goldsmith v. Imp. Co.,* 1 L. R. Eq. Cases, 1865-66. These and other authorities, too, indicate that it is not practicable to lay down a general rule so clearly defined that its proper application can always be readily made, and each case to some extent must be made to depend upon its own special facts and circumstances. Thus, in *Gilford v. Hospilal, supra,* it is said: "The learned counsel have cited many adjudications and the subject is thoroughly treated in Wood's Law of Nuisance. It seems unnecessary to specify cases, because each one differs from most others in facts. In *Ross v. Butler,* 19 N. J. Eq., 294, the Court states a correct conclusion: 'In fact, no precise definition can be given. Each case must be judged of by itself.' In Wood's textbook it is well said, in section 9: 'The locality, the condition of property and the habits and tastes of those residing there, divested of any fanciful notions or such as are dictated by "dainty modes and habits of living," is the test to apply in a given case. In the very nature of things there can be no definite or fixed standard to control every case in any locality. The question is one of reasonableness or unreasonableness in the use of property, and this is largely dependent upon the locality and its surroundings.' To my mind the hospital is not a reasonable use of property, considering the locality and surroundings."

In the case at bar there is evidence on the part of plaintiff, direct, positive and specific, that the erection and use of a hospital in that particular locality, in the manner and for the purpose proposed, will be a source of real danger to the lives and health of numbers of people living in that vicinity; and, while the affidavit of defendant himself makes specific response, a large portion of the supporting evidence offered by defendant is very general in its terms and made without reference either to the special locality or to the special manner in which the particular hospital is to be constructed and carried on.

If defendant desires to proceed with the construction of his buildings and risk the results of the trial, the restraining order may be modified to that extent, but any and all use of the buildings for the purposes indicated should be restrained to the hearing, and the judgment of the court below in that respect is affirmed.

Modified and Affirmed.