CHARLES HISLOP et al., Appellants, v. CITY OF JOPLIN.

Division One, May 31, 1913.

1. **EXTENDING CITY LIMITS: Sec. 5752, R. S. 1899: Constitutional Despite Invalid Proviso.** Section 5752, R. S. 1899, providing that "the mayor and council of such city [of the third class], with the consent of a majority of the legal voters of such city voting at an election therefor, shall have power to extend the limits of the city over territory adjacent thereto . . . in such manner as in their judgment and discretion may redound to the benefit of the city:" is valid and constitu-

tional despite an unconstitutional proviso, to-wit: "Provided, however, that all agricultural and pasture lands in tracts in excess of forty acres in such city shall be exempt from taxation for city purposes until said lands are laid off into lots and blocks and plats of the same filed for record."

2. ————: Ordinance: Reasonableness: Presumptions: Burden of Proof. Since it is within the statutory power of a city council to provide by ordinance for the extension of the city limits, an ordinance for such extension is presumed to be reasonable and valid until that presumption is overthrown by evidence which clearly shows the contrary, and courts will not look closely into mere matters of judgment where there may be a reasonable difference of opinion. The burden is upon those who seek to enjoin the operation of such an ordinance to prove facts clearly establishing its unreasonableness.

3. ————: ————: ————: Evidence. By the census of 1910 the city of Joplin was found to have over 32,000 inhabitants, and in the eighteen years preceding 1908 had increased in population nearly two hundred and fifty per cent. In that year the city limits were extended so as to bring into the city about 2100 acres, approximately one-third of which had been platted. The plaintiffs seek by injunction to defeat the extension, and one of them estimated the population of the extension at about 300 families, but the evidence as to the distribution of this population is meagre. Whether that part of the original city lying adjacent to the extension is a residential, business or manufacturing district is not shown. Indeed there was little or no evidence as to whether the lands were needed for city purposes, or as to how, by whom or for what purposes they were held and whether the unplatted lands are to be brought on the market as town property when they reach a value satisfactory to the owners. Neither the value of the lands included nor the extent to which the value depended upon their adaptability for city purposes is discoverable from the record, nor does it appear that they are not needed to supply places for the abode and business of residents of the town. *Held*, that, in such circumstances, the extension cannot be defeated as unreasonable.

4. ————: ————: Fraud of Council: Evidence. Evidence that in the six months since an extension of city limits, lights, sewers, police, etc., had not been provided in the annexed district is relevant as supporting an allegation that the extension worked a fraud, but where, as in this case, the evidence indicates that plaintiffs and others kept up a continuing agitation against the extension both before and after the election, it better accords with the presumption of right action to ascribe the delay to the public agitation than to fraud on the part of the city council.

Appeal from Jasper Circuit Court.—*Hon. H. L. Bright,* Judge.

AFFIRMED.

*Mooneyham & Shepherd* for appellants.

(1) Where an ordinance of a city is unreasonable, unjust or oppressive, it will not be enforced. Springfield v. Jacobs, 101 Mo. App. 339; 1 Beech on Public Corporations, sec. 90; Tugman v. Chicago, 78 Ill. 405; Caldwell v. Alton, 33 Ill. 416; Norris v. Westport, 110 Mo. 502; Graysitt v. Railroad, 116 Mo. 450; Kelly v. Meeks, 87 Mo. 396; Corrigan v. Gage, 68 Mo. 541; St. Louis v. Webber, 44 Mo. 547; Lamar v. Weidman, 57 Mo. App. 547; Hannibal v. Tele. Co., 31 Mo. App. 23; Carrollton v. Bozzette, 159 Ill. 284; Ottumwa v. Zekind, 95 Iowa, 622; Cape Girardeau v. Riley, 72 Mo. 220. (2) This ordinance is unreasonable, oppressive and unjust as shown by the evidence. The complainants received nothing in return for the taxes they pay; no police protection; no fire protection; no gas or electric light service. Kelly v. Meeks, 87 Mo. 421; Corrigan v. Gage, 68 Mo. 544; St. Louis v. Webber, 44 Mo. 547; City v. Telephone Co., 21 Mo. 23; Parker v. Zeisler, 73 Mo. App. 537. (3) The property of plaintiffs does not come within any of the requirements that are laid down as necessary by the courts, before a city may extend its limits reasonably and properly. The property of plaintiffs has not been platted; it is not being held for city property until it shall reach a price commensurate with the ideas of plaintiffs, when it shall be placed on the market as city property; it is not a densely populated region; it is not the natural growth of the city beyond its limits; it is not necessary that the city should exercise police control over it, and it receives none of the benefits that city property ought to receive from the municipality. Vestal v. Little

Rock, 54 Ark. 321; Copeland v. St. Joseph, 126 Mo. 417; Parker v. Ziesler, 73 Mo. App. 537. (4) Sec. 5752, R. S. 1899, is unconstitutional and void, because it contains a proviso that all agricultural and pasture lands in tracts of forty acres in such city shall be exempt from taxation for city purposes, until said land is laid off in lots and blocks and plats of same are filed for record. This is in violation of Art. 6, Secs. 6 and 7, Constitution of Missouri. It is an attempt to exempt property for taxation in a manner not provided for by the Constitution. It follows, as a matter of course, that ordinance No. 3298, and all ordinances under which the city of Joplin attempted to extend its limits on the 14th day of August, 1908, was null and void. Where a city extends its limits by ordinance, and the statute authorizing the ordinance is void, the ordinance will be void. Copeland v. St. Joseph, 126 Mo. 417; State ex rel. v. Wardell, 153 Mo. 319; Kansas City v. Cook, 69 Mo. 127. (5) The proviso contained in Sec. 5752, Ann. Statutes 1906, is tied to the balance of the section by the word, "provided," showing clearly the Legislature intended to make the preceding part dependent upon this proviso. Where the unconstitutional portion cannot be separated from that which is constitutional, the whole of the law is unconstitutional and void. Slawson v. Racine, 13 Wis. 398; Kansas City v. Cook, 69 Mo. 127; State ex rel. v. Wardell, 153 Mo. 319; Westport v. McGee, 128 Mo. 152. If any further proof was needed of the intention of the Legislature to make the power of the city to extend its city limits dependent upon the proviso for the exemption of the forty acre tracts, it is shown by the Laws of 1909. At pages 288 and 289, the Legislature, realizing that their former act was unconstitutional because of this proviso upon which they had made the power of the city to extend its limits dependent, repealed section 5752, and enacted a new section, leaving out the offensive clause, stating that inasmuch as cities of the

third class had no power under the present law to extend their limits, that an emergency was created within the meaning of the Constitution and therefore this act should take effect and be in force from and after its passage. The word, "provided," is a conjunction, and means: on condition; with the understanding; or; if. Standard Dictionary, p. 1054. In no case that has been decided by this State, or any other State, has a statute been held good where an unconstitutional portion is connected with the constitutional by the word, "provided." State ex rel. v. Burch, 186 Mo. 205; Burch v. Platsburg, 180 Mo. 413; Westport v. McGee 128 Mo. 152.

*Mercer Arnold* for respondent.

BLAIR, C.—Plaintiffs are resident owners of realty in a tract which the defendant city attempted in 1908 to bring within its limits by proceeding under section 5752, Revised Statutes 1899. An election was ordered and held and the requisite majority favoring the extension, the result was by ordinance duly passed declared to be the addition to the city of the tract involved. City taxes were assessed against and levied upon property in the affected territory and the city officers were threatening and attempting to enforce their collection when this suit was begun by plaintiffs, for themselves and all others similarly interested and situated, to enjoin the city from proceeding further in that direction. The petition alleged that the extension was, on enumerated grounds, unreasonable and that section 5752, Revised Statutes 1899, was unconstitutional and void and that, consequently, the assessment and levy were void and the taxes unenforceable. It is also alleged that the effect of the extension is to work a fraud upon the rights of plaintiffs and others and, further, that resort to equity is necessary in order to prevent a multiplicity of suits.

The case was submitted on plaintiffs' evidence and the trial court dismissed the bill and rendered judgment for defendant.

I.  Section 5752, Revised Statutes 1899, provided that "the mayor and council of such city, with the consent of a majority of the legal voters of such city voting at an election therefor, shall have power to extend the limits of the city over territory adjacent thereto . . . in such manner as in their judgment and discretion may redound to the benefit of the city: Provided, however,.that all agricultural and pasture lands in tracts in excess of forty acres in such city shall be exempt from taxation for city purposes until said lands are laid off into lots and blocks and plats of the same filed for record."

Extending
City
Limits:
Sec. 5752,
R. S. 1899,
Constitutional:
Void
Proviso.

The proviso in this section conflicts with constitutional provisions and is void.  Whether its invalidity destroys all that part of the section concerning limit extensions is another question.

As has previously been pointed out (State ex rel. v. Wardell, 153 Mo. 319) the Legislature in 1889 repealed the then existing and valid section (Laws 1887, p. 66, sec. 2) authorizing cities of the third class to extend their limits, and made a futile effort to replace it with section 1466, Revised Statutes 1889, in which the proviso by which it was attempted to exempt from taxation certain agricultural and pasture lands *included in such extension* was held to invalidate the whole of the provision authorizing limit extensions.

In City of Westport ex rel. v. McGee, 128 Mo. 152, ·and Birch v. Plattsburg, 180 Mo. 413, the constitutionality of section 1580, Revised Statutes 1889, by which section cities of the fourth class were authorized to extend their limits, was drawn in question.  That sec-

tion, after providing a method for the extension of limits by such cities, contained this final sentence: ''All agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less.''

In the cases cited the quoted portion of section 1580 was held unconstitutional but the court decided its invalidity did not affect the remainder of the section.

In the first of these cases the court, in discussing the effect of the partial invalidity of section 1580, said:

''It will be observed that no condition is annexed, and no proviso added, by which its powers over any territory thus annexed is curtailed.· In this respect it differs radically and substantially from the Act of 1887.    But immediately following this provision is another which exempts, *not the lands included in the extension only*, but 'all tracts of agricultural or pastoral lands included within the corporate limits of the city,' which exceed five acres in area.    Standing thus, the two provisions are distinct, one relating to extension, the other to exemption from taxation without reference to extension.''    The court then pointed out that this section first contained no exempting clause, that in 1879 it was amended by adding a sentence by which it was attempted to exempt ''all agricultural or pastoral lands *included in such extension*'' that in 1889 this was amended (Sec. 1580) so as to read ''All agricultural and pastoral lands within the corporate limits of the city'' and in 1891 the entire invalid provision was eliminated and proceeded.

''Can it be said, in view of this history of this provision, that the Legislature would have denied these cities the power to extend their limits, unless the unconstitutional provision had been inserted in the act? Nothing short of the most positive language should

lead us to such a conclusion. We do not think this general exemption indicates an intention to deny the right of extension, but was simply an attempt of the Legislature to exempt such property generally, because we must go further than merely to hold that the power to extend the limits was dependent upon the exemption, because, as it now appears, we must hold that the Legislature would have denied the power of incorporation altogether where such tracts were included in the city limits, and this in the face of the unconstitutionality of the exemption, and the fact that all other cities were permitted to extend their limits without such a provision. Our conclusion is that the exemption is unconstitutional, and that the power of extension in this charter was not so dependent upon it that the ordinance incorporating defendant's lands within the city should be held void.''

In discussing this same section in Birch v. Plattsburg, supra, this court after quoting the general rule that it is only ''where the provisions are so interdependent that one may not operate without the other, or so related in substance and object that it is impossible to suppose that the Legislature would have passed the one without the other, the whole must fall'' by reason of partial invalidity, said:

''Applying the rule to the legislation in hand (which has been set out at length to demonstrate the fact) the conclusion reached seems irresistible. The purpose of the Legislature by the section in question to confer upon cities of the fourth class the power to extend their limits, is manifest from the beginning, to the end thereof. It was conferred in the beginning, before this obnoxious exemption clause was injected into the section, and has been continued unimpaired since that clause was eliminated. [R. S. 1899, sec. 5895; Laws 1895, p. 65.] The clause itself is an independent one. The other provisions of the section are not dependent in any manner or form, on the clause,

nor is it dependent upon them, but may be stricken out, leaving the remainder of the section a law complete in itself, that may be executed according to the legislative intent."

There is this difference between the section (5752, R. S. 1899) under consideration and that dealt with in the cases mentioned, that though both purport to exempt all agricultural and pasture lands of certain area within the entire city limits and not merely those within the extension, yet in section 1580, Revised Statutes 1889, the exempting clause consisted of a separate, distinct and unconnected sentence, while in section 5752, Revised Statutes 1899, that clause is an ordinary proviso, connected with the preceding sentence by the words "provided, however."

If the conclusion reached in the cases quoted is accepted as correct there remains only the question whether this difference renders inapplicable the rule they announce. It is established law that the mere fact the valid and invalid provisions are found in the same section is not conclusive on the question. In fact their occurrence in the same sentence would not be so. The question is "whether they are essentially and inseparably connected in substance." [1 Lewis' Sutherland on Statutory Construction, sec. 296.]

It is clear enough that the section contains valid provisions sufficiently complete to be capable of enforcement though the invalid proviso had been omitted, and it is also clear that there is no such essential and inseparable connection in substance between the subjects of extension of limits and the taxation, or exemption from taxation, of agricultural lands in the city at large that the two cannot be legislated upon separately. It would hardly be suggested that if the exempting clause appeared in another section it would invalidate the provisions as to extensions, and, as shown above, it has been expressly held not to do so when it appeared in a distinct sentence in the same sec-

tion with such provisions. The effect of that ruling was, also, that the exemption was not the inducement for the whole, and that it was not unreasonable to presume the Legislature would have passed the valid part even though the invalid portion had been stricken out.

The right to extend their limits, without exemptions from taxation, previously had been accorded to cities of the third and other classes and is accorded them now. Provisos are usually held to refer to the immediately preceding subject-matter, but the substance of the proviso in section 5752, in so far as it affects agricultural lands within the unextended city, bears no real relation to the idea of extension at all. The preceding part of the section deals with the jurisdiction and limits of the unextended city as well as extension of the limits, and the language of the proviso is as applicable to the original as to the extended limits. Is it reasonable to say the section means that all lands, agricultural and others, in cities of the third class are to be taxed alike until the limits are extended and then designated agricultural and pasture lands, previously taxed, in the original limits as well as within the extension, are to be exempted? This is the meaning which must be given it if the proviso is limited strictly to the preceding sentence and construed as a condition upon which the Legislature granted such cities power to extend their limits. The more natural construction seems to be that the Legislature simply undertook to exempt certain lands from taxation whether the limits were extended or remained unchanged—a general exemption to be applicable at all times in cities of the third class.

Accepting this as the more reasonable construction, and keeping in mind the fact that by section 5752 the Legislature was providing for the continuation and incorporation as well as the extension of cities of the third class, it does not seem reasonable to say, in view of what seems to have been the dominant legisla-

tive purpose in enacting the section mentioned, that the court can presume the valid portion of the section would not have been enacted had the Legislature been aware of the invalidity of the proviso or if it had been stricken out. The purpose to exempt agricultural lands within cities before their limits should be extended is as clear as the purpose to exempt like lands within extensions and the former cannot well be said to be an appropriate compensation or inducement for the grant of the power to extend the limits. How it could so operate in the legislative mind is not easily comprehensible. The legislative motive, so far as this part of the attempted exemption is concerned, was not to condition the power to extend limits, but simply to grant an exemption from taxation. That being the motive prompting the enactment of the proviso in so far as it affected the agricultural lands already included within cities of the third class, it would seem reasonable to ascribe the whole proviso to it. The language of the proviso is general. There are no special words applicable solely to exemption within extensions of limits. There being an apparent reason for the proviso which clearly explains its enactment in part and is also applicable to explain the whole, it would be exhibiting great anxiety to overthrow legislation for this court to engage in a search through the general language of the proviso for some separable motive for its enactment in so far as it affects agricultural lands *within extensions,* whereby to undermine the whole provision for extending city limits. Interpreted as a simple effort to exempt from taxation certain lands within third class cities the invalid proviso cannot reasonably be said to bear such a relation to the remainder of the section that the provision as to extension of limits must fall.

The ordinance submitting to the voters the question as to the proposed extension is not in the record and it will be presumed it followed the valid portion of

section 5752 and contained no provision attempting to exempt any property from taxation.

2. It is argued that the extension was unreasonable and therefore invalid.

Since it was within the statutory power of the council to provide by ordinance for the extension of the city limits the particular ordinance here involved is presumed to be reasonable and valid until that presumption is overthrown by evidence which clearly shows the contrary and courts will not "look closely into mere matters of judgment where there may be a reasonable difference of opinion." [City of St. Louis v. Weber, 44 Mo. l. c. 550; Copeland v. St. Joseph, 126 Mo. l. c. 431; 2 Dillon on Mun. Corps., sec. 649.] The burden was upon plaintiffs to prove facts clearly establishing the unreasonableness of the ordinance assailed.

*Reasonableness of Extension: Presumptions.*

In State ex inf. v. Kansas City, 233 Mo. l. c. 213, this court approved the conclusions of law arrived at by the commissioner, Judge Kimbrough Stone, wherein, quoting from a case he pointed out had theretofore been approved by this court, he held that the rule to be applied in determining the reasonableness of an extension of city limits is:

"1. That the city limits may reasonably and properly be extended so as to take in contiguous lands (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner, (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents; or for the extension of need-

ed police regulation, and (5) when they are valuable by reason of their adaptability for prospective town uses. . . . ''

Some additional grounds are also stated. By the census of 1910 Joplin was found to have over 32,000 inhabitants and in the eighteen years preceding the extension assailed had increased in popula-

**Evidence.** tion nearly two hundred and fifty per cent. The area of the city prior to the extension of its limits in 1908 is not shown, but the extension brought into the city about 2100 acres, approximately one-third of which had been platted. One of the plaintiffs estimated the population of the extension at about 300 families. The evidence as to the manner in which this population was distributed over the extension is very meagre and it does not appear where, with reference to the old limits, the most of these families live. Whether the district of the original city lying adjacent to the extension is a residential, business or manufacturing district is not shown. Whether the lands in the extension were needed for city purposes is neither disproved nor proved by the evidence. There is little or no evidence either way upon the question. There was almost no evidence as to how, by whom or for what purposes the platted and unplatted lands are held, and whether the latter are to be brought on the market as town property when they attain a value the owners think satisfactory was not shown. Neither the value of the lands included nor the extent to which that value depended upon their adaptability for city purposes is discoverable from the record, nor does it appear that they are not needed to supply places for the abode and business of residents of the town.

These questions were proper ones for consideration by the council and it will be presumed to have passed upon them in reaching its conclusion to submit the proposed extension to the voters and will be presumed to have concluded on the existing facts that for

one or more of the reasons enumerated the lands within the proposed extension might lawfully be added to the city. It is presumed that the council acted reasonably. In view of these considerations the trial court could not well hold that the council acted *unreasonably* until evidence of the facts and conditions were adduced which disclosed that the council attempted to include lands which it had no lawful right to include. The mere possibility of unreasonable action is not a sufficient answer to the presumptions mentioned. The burden was upon plaintiffs to show a lack of lawful reason to support the council's action before the extension could be held invalid (St. Louis v. Theatre Co., 202 Mo. l. c. 701) and this rule is as applicable to a limit extension ordinance as to any other. [Copeland v. St. Joseph, supra.]

It is said, however, that lights, sewers, police, etc. have not been provided in the newly acquired territory and this avoids the ordinance. On the question of fraud this evidence is relevant but in this case the evidence indicates plaintiffs and others kept up a continuing agitation against the extension, both before and after the election, and organized and raised funds to test its validity.

Fraud

This suit was actually begun March 1, 1909, and in considering the evidence of delay in improving, lighting and policing the extension during the six months between the passage of the ordinance declaring the result of the election and the commencement of this suit it better accords with the presumption of right action to ascribe that delay to the public agitation against the extension and the threatened and impending suit to test its validity than to fraud on the part of the council, even if it be conceded a delay for six months might under other circumstances justify an inference of fraud. The trial court did not draw the inference of fraud and there is no good reason for holding it erred in failing to do so.

Under the applicable rules of law this court is not in position to say that the trial court erred in finding that on the credible evidence adduced there was no sufficient showing of the unreasonableness of the extension ordinance. The judgment is affirmed. *Brown, C.,* concurs in the result.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All of the judges concur.