# W. C. MULLINS v. MOUNT SAINT MARY'S CEMETERY ASSOCIATION et al; MOUNT SAINT MARY'S CEMETERY ASSOCIATION, Appellant.

### Division Two, July 18, 1916.

1. SEWER TAX: Cemetery: Presumption in Favor of Ordinance. There is a presumption in favor of the reasonableness of an ordinance which includes a cemetery within a district sewer district, and taxes the cemetery property with the cost of constructing lateral sewers laid in the alleys or streets abutting against the cemetery. The burden of establishing the contrary rests upon the objector and this prima-facie case must be overcome in the most satisfactory manner.

2. ———: ———: ———: When No Contrary Showing. Where the evidence shows that the sewers, for the payment of the cost of the construction of which the tax bills sued on were issued, served to carry away the surface water from the cemetery, and there is no evidence that sewers are not beneficial in the sanitation of the cemetery, it will be presumed that the city legislature was fully informed on the subject and that its ordinance including the cemetery in the sewer district was reasonable.

3. ———: ———: Area Rule: Reasonableness. A city council must levy a district sewer tax upon cemetery property in proportion to area, or relieve it from benefit assessment altogether; and although the tax is very large, owing to the large size of the cemetery, its ordinance levying a tax according to area must stand in the absence of evidence showing that it was unreasonable.

4. ———: Cemeteries as Separate Districts: Evidence. It is not reversible error to exclude evidence to show that the city had in two other cases made cemeteries separate sewer districts, where there is no showing that the facts connected therewith were similar to those in the case on trial.

5. ———: Notice of Proceedings: Due Process. No notice is necessary of the proceedings resulting in the sewer tax bills which are legislative assessments, unless such notice is required by the charter or some ordinance or some statutory provision.

6. ———: Against Cemetery as a Whole. The sewer tax bills should be issued against the cemetery as an entirety if the ownership of all the land in the cemetery is in the cemetery association.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*McCune, Harding, Brown & Murphy, William Moore* and *Clarence S. Palmer* for appellant.

(1) As to the property of this defendant, the imposition of the special assessments in question could result in no possible benefit, actual or potential. The acts were manifestly oppressive and an unreasonable exercise of municipal authority and therefore void. The trial court erred in not so finding and deciding. Neenan v. Smith, 50 Mo. 525; Grading Co. v. Holden, 107 Mo. 305; McGhee v. Walsh, 249 Mo. 279; Corrigan v. Gage, 68 Mo. 541; Kelly v. Meeks, 87 Mo. 401; Copeland v. St. Joseph, 126 Mo. 417; St. Louis v. Theatre Co., 202 Mo. 690; Halpin v. Campbell, 71 Mo. 493; Freund on Police Powers, sec. 158. (2) As the charter under which this work was done contained no provision for notice to property owners or no opportunity for a hearing, the courts alone can give redress against the unreasonable and arbitrary acts of the city authorities. Sec. 10, art. 14, Charter of 1889, p. 147; Meier v. St. Louis, 180 Mo. 409; McGhee v. Walsh, 249 Mo. 284. (3) If this court decides that the ordinances were not so unreasonable as to be void, still it was error in the trial court to hold that one tax bill could be issued, including both the land still owned by the defendant and the land already sold. The effect of this ruling, under the facts in the record, was to make half the amount of the tax bills the personal obligations of the defendant. The trial court erred in not giving defendant's instruction number 2. Sec. 10, art. 14, Charter of 1889, p. 147; Fowler v. St. Joseph, 37 Mo. 228; St. Louis v. Provenchere, 92 Mo. 66;

Cooley on Taxation, sec. 410; Christian to use v. Taussig, 8 Mo. App. 602; Kemper v. King, 11 Mo. App. 116; City to use v. Allen, 53 Mo. 54; Neenan v. Smith, 50 Mo. 525; State v. Newark Co., 50 N. J. L. 66; Cemetery Co. v. Brockmaster, 49 N. J. L. 449; Neil v. Ridge, 220 Mo. 233. (4) The enforcement of the special assessments with no resulting benefits, actual or potential, amounts to the taking of property of defendant without due process of law, in violation of section 20, article 2, of the Constitution of Missouri, and of section 1 of the Fourteenth Amendment of the Constitution of the United States. Hayes v. Missouri, 120 U. S. 68; Railroad v. Minnesota, 134 U. S. 458. (5) The judgment of the trial court in enforcing the whole amount of the special tax bills as a single lien against the property now owned by defendant, including that part of the amount of said tax bills computed on the area of land already sold by defendant, amounts to a denial to the defendant of the equal protection of the laws, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States. (6) The court erred in rejecting evidence offered to show the amount of sewer bills issued against the land in question prior to the issue of the bills in suit, also in rejecting evidence offered to show that in other cases Kansas City had established sewer districts comprised only of a cemetery. This evidence was competent on the question of the reasonableness of the proceedings as they affected the land in question.

*Fyke & Snider* for respondent.

(1) The question of benefits is a question peculiarly within the province of the city council. Keith v. Bingham, 100 Mo. 306; State ex rel. v. Schweickardt, 109 Mo. 511; Heman v. Allen, 156 Mo. 543; Johnson v. Duer, 115 Mo. 376; Heman v. Schulte, 166

Mo. 417; Prior v. Construction Co., 170 Mo. 451; Corrigan v. Kansas City, 211 Mo. 649. (2) It is claimed by the learned counsel for the defendant that the establishment of the sewer district by ordinance, and the ordinance providing for the construction of District Sewer in Sewer District 218 without notice to the defendant, violate the provisions of the Constitution of the State of Missouri and of the United States. By a long line of decisions of the Supreme Court of Missouri such proceedings have been held valid and not in violation of any constitutional provision of the State or of the United States. Kansas City v. Huling, 87 Mo. 207; Mining Co. v. Joplin, 124 Mo. 138; Bank v. Carswell, 126 Mo. 444; Moberly v. Hogan, 131 Mo. 23; Heman v. Schulte, 166 Mo. 414; Asphalt Co. v. French, 158 Mo. 552; Davidson v. New Orleans, 96 U. S. 97; State ex rel. v. Seehorn, 246 Mo. 584. Under the city charter the defendant is not denied due process of law. No notice of the ordinance creating the sewer tax was necessary, neither was any notice of the ordinance for the construction of the sewer necessary. The charter provides that, in any action on a special tax bill the defendant may plead and prove that the work was not done in a workmanlike manner, and may reduce the bill if such fact be established. The lien against his property cannot be enforced except by an action in court of which the property owner must have notice; therefore under all decisions he has due process of law. (3) The suggestion that two tax bills should have been issued, because defendant has different interests in different parts of the ground is without merit. Parsons v. Grand Rapids, 141 Mich. 467.

ROY, C.—Plaintiff recovered judgment on special tax bills for sewer construction. The defendant has appealed. This is the third appeal in the case. [See: 239 Mo. 681 and 259 Mo. 142.]

The petition is in two counts, the first being based on a tax bill issued October 12, 1904, for $17,-598.28, and the second on a tax bill issued September 1, 1905, for $1,531.71. Both bills bear interest, in case of default, from date, at ten per cent.

Sewer District No. 218, in which the work was done, was established by ordinance on August 2, 1901. It is the largest in the city, containing about 407 acres. It is over a mile and a half long north-and-south, and nearly three-fourths of a mile wide in the middle. The land slopes from the east and west sides to the middle line, and there is a general incline to the north. The cemetery is composed of a square sixteenth of a section, except four acres belonging to the Home of the Sisters of the Good Shepherd in the northwest corner, and excepting such part as may be in the streets on the east, south and west sides of it, the cemetery proper containing about thirty-four acres. The evidence on the point is not clear, but tends to show that the most of the surface water of the cemetery runs to the west, gathering considerably towards the part just south of the Home of the Good Shepherd. When unrestrained it passes onto and over the adjoining land. To what extent such surface water flows northward onto adjoining land is not shown.

The tax bills in controversy were issued for the construction of lateral sewers, some of which with manholes and catch basins therein, extend along the south and west sides of the cemetery and along the north fourth of the east side. There is no street along the north side; but there are three streets and four alleys extending from the north and terminating in culs-de-sac at the cemetery line. Sewers were placed in those alleys, with manholes in each close to such line. None of those sewers were laid in the cemetery grounds. No openings in the sewer pipes

were made on the sides next the cemetery for house connections, but the evidence shows that such openings are often made by the plumbers when the connections are made.

In grading the street on the west a ten-foot fill was made near the northwest corner of the cemetery. The grading contractor placed a ten-inch pipe so as to lead the water from the cemetery into the manhole at that point, thus preventing the formation of a pond. There are two waterclosets in the defendant's grounds, neither of which connects with the sewers. The defendant has an eight-inch pipe about 400 feet long laid in the cemetery for the purpose of drawing the water towards the west.

The cemetery's existence began in 1877. The corporation is a charitable one and has no capital stock. About half the land in the cemetery had been disposed of in lots to purchasers for burial purposes prior to 1904. There had been about 9,000 interments, the number being about 15,000 at the time of the last trial. The lots sell at from fifty-five to seventy cents a square foot. The by-laws of defendant provide that one-third of the money received for lots sold shall constitute a maintenance fund to be loaned at interest, the income to be used in caring for the cemetery. The evidence shows that the land in that vicinity, for other than cemetery purposes, is worth from $1,250 to $5,000 an acre. Witnesses both for plaintiff and defendant testified that the location of the cemetery affected the value of the land in the vicinity, but they did not say whether it enhanced or depreciated it. The defendant offered to prove that two other cemeteries in Kansas City had each been made a separate sewer district, but the evidence was excluded. The trial court also excluded evidence offered by defendant to show that two other special tax bills for the construc-

tion of sewers in that district had been issued against defendant prior to those in suit, one for $9,104.30, and the other for $1,611.15. The plaintiff was put on the stand by the defendant and testified that when he made his bid for the work he knew that the land of the defendant was used for a cemetery. He also testified that he had built some sewers for Elmwood Cemetery.

On the two questions, as to whether and to what extent sewers are necessary to cemeteries generally and to this one in particular, and as to whether the inclusion of this cemetery in such district was a reasonable exercise of the power of the Common Council, there was no evidence offered except as shown in the above statement.

I. The first point in appellant's brief is therein stated as follows:

"As to the property of this defendant, the imposition of the special assessments in question could result in no possible benefit, actual or potential. The acts were manifestly oppressive and an unreasonable exercise of municipal authority and therefore void. The trial court erred in not so finding and deciding."

In its printed argument is this statement:

"The testimony shows from the topography of the district that there was no engineering reason why this tract of land might not have been established as a sewer district by itself and thus relieved of all burden of the construction of lateral sewers which are essential to the comfort and health of the living, but which are entirely useless for the city of the dead."

There is a presumption in favor of the reasonableness of such an ordinance, and the burden of establishing the contrary rests upon the objector. [Hislop v. Joplin, 250 Mo. 588; St. Louis v. Theatre Co., 202 Mo. 690.]

Reasonableness of District Sewer Tax on Cemetery.

That prima-facie case must be overcome "in the most satisfactory manner." [Morse v. City of West Port, 110 Mo. 502.]

The language of appellant's counsel is an unequivocal claim that it has no need for sewers and is under no obligation to furnish them to others; in other words, that its cemetery, for the purpose of sewer construction at least, has ceased to be a part of the city within whose limits it is situated.

We will first consider the question as to whether such a cemetery is benefited by the construction of sewers. "Drainage of a district for sanitary purposes is the ground upon which the compulsory construction of sewers, and the imposition of special taxes to pay the cost thereof, is authorized." [Johnson v. Duer, 115 Mo. l. c. 377.]

In Prior v. Construction Co., 170 Mo. 439, it was held that plaintiff's property, located on high ground, was benefited by the construction of a sewer which prevented its sewage from being cast upon the streets and sidewalks and into the cellars in a lower part of the district. In other words, each tract of land in a city should bear its portion of the burden of preventing the passage of any noxious thing from it into or onto other lands. Whatever discharges that burden is a benefit to the property whence the noxious substance emanates. Concede that the dead are indifferent to the question, the living have a right to demand that noxious substances shall not be disseminated from a cemetery into and over other lands.

"Thou shalt not bury a dead man in the city" was one of the laws of the Twelve Tables.

In Kincaid's Appeal, 66 Pa. St. 411, SHARSWOOD, J., said: "No one can doubt the power of the Legislature to prohibit all future interments within the limits of towns or cities. In ancient times, in Greece and Rome, such was the universal rule."

In Lowe v. Prospect Hill Cemetery Assn., 58 Neb. 94, the defendant was enjoined from using a tract of ground in Omaha as a cemetery. The evidence showed that the ground in that vicinity was very pervious. Expert witnesses testified that disease germs often existed and multiplied in dead bodies, and were disseminated thence through the ground into neighboring lands, contaminating them, and rendering the water in the wells noxious to the health of the inhabitants. Other cases of like import are Clark v. Lawrence, 6 Jones Eq. (N. C.) 83; Jung v. Neraz, 71 Tex. 396; Los Angeles v. Hollywood Cem. Assn., 124 Cal. 344; Kingsbury v. Flowers, 65 Ala. 479; Sohier v. Trinity Church, 109 Mass. 1; and Partridge v. First Independent Church, 39 Md. 631. See also Joyce's Law of Nuisances, sec. 393.

In Town of Lake View v. Letz, 44 Ill. 81, the court had under consideration an ordinance which prohibited the opening of any cemetery in the town (township) without the permission of the trustees. It was there said:

"There are some things which in their nature are nuisances, and which the law recognizes as such. There are others which may or may not be so, their character in this respect depending on circumstances. Now, the town of Lake View is a rural township, containing about eleven sections or square miles of territory. It is therefore impossible to hold that a cemetery, anywhere within the limits of the town, must be necessarily a nuisance, and can be prohibited

in advance as such.  A cemetery may be so placed
as to be injurious to the public health, and therefore
a nuisance.  It may, on the other hand, be so located
and arranged, so planted with trees and flowering
shrubs, intersected with drives and walks, and deco-
rated with monumental marbles, as to be not less
beautiful than a public landscape garden, and as free
from all reasonable objection.''

In Lake View v. Rose Hill Cem. Co., 70 Ill. 191,
is the following:

''Burial places are indispensable.  Convenient to
the city of the living, a depository of the dead must
be established and maintained.  It concerns the pub-
lic health, and if such places were not prepared by
private enterprise, it would be the duty of the State
to act in the premises.''

It will be noticed that the court does not there
approve the location of cemeteries in populous cities.
It speaks of them in places ''convenient to the city
of the living.''  On the other hand, it was said in
Ellison v. Commissioners, 58 N. C.  57: ''If  the
grounds be arranged and drained, and the burial of
the dead be conducted as elsewhere in such estab-
lishments, we incline decidedly to the opinion, it will
not be a nuisance, either public or private.''

We cite those cases only for the purpose of show-
ing that the defendant is not justifiable in asserting
that its land should have been excluded from the
sewer district merely because it is a cemetery.  There
is no evidence in the case to show that sewers are
not beneficial in the sanitation of this cemetery.  In
the absence of a showing to the contrary, we must
presume that the Common Council was fully inform-
ed on that subject, and acted properly in accordance
with that information.  The evidence does show that
the sewers for the construction of which the tax

bills were issued serve to carry away the surface water from the cemetery.

Appellant claims that the cemetery might have been made into a sewer district by itself, so as to relieve it of the burden of construction of the lateral sewers. True, it *might* have been done; but there is no reason appearing why it *should* have been done. The appellant complains, not that a discrimination was made against it, but that no discrimination was shown in its favor. We have seen that the law has through all the past discouraged the location of cemeteries in populous districts. Real estate men who were witnesses on both sides in this case testified that the cemetery affected the value of real estate in that vicinity. We feel justified in assuming that such value was thus affected adversely. There is no sound reason why the cemetery should be relieved of its share of the burden of getting rid of a condition, caused to some extent by its presence there. The district, so far as we can understand the situation, is homogeneous, a proper "unit" in the general system of sewers. By carrying out the work of sanitation the cemetery may become more and more a comfort and an ornament to the community, and that community may become a more attractive framework for the cemetery.

There is another fact in the case which deserves consideration. The tax bills against the land of the defendant seem very large. That is caused by the fact that there are thirty-five acres in the cemetery. The "area rule" is firmly grounded in our law. The Common Council had no choice in the matter except to tax the cemetery in proportion to its area, or relieve it altogether. It doubtless appreciated the serious difficulties in the matter, but its judgment must stand in the absence of evidence sufficient to show that it was unreasonable. Complaint is

made that the court excluded evidence offered by defendant to show that in two other cases cemeteries were made separate districts. Whether the facts connected therewith were similar to those in this case is not shown. It may have been found by experience that such discrimination in favor of the cemeteries was not just to the other land in the vicinity.

II. Appellant contends that as there was no provision in the law for giving it notice of the proceedings resulting in the issuing of the special tax bills in question, an enforcement of such tax bills will result in taking its property without due process of law. It is sufficient to say that such tax bills are legislative assessments, and no notice is necessary unless required by "some charter, ordinance, or statutory provision to the contrary." [Embree v. Road District, 257 Mo. 593.] That opinion was affirmed on writ of error to the Supreme Court of the United States. [240 U. S. 243.]

*Notice of Assessment.*

III. Appellant makes the following point: "The judgment of the trial court in enforcing the whole amount of the special tax bills as a single lien against the property now owned by defendant, including that part of the amount of said tax bills computed on the area of land already sold by defendant, amounts to a denial to the defendant of the equal protection of the laws, in violation of section 1 of the 14th Amendment to the Constitution of the United States."

*Assessment On Cemetery as a Whole.*

We are furnished with no authorities or even argument on that proposition. On the last appeal it was held, in effect, that the ownership of all the land in the cemetery for the purpose of such taxation is in the appellant. Such being the case, the tax bills were properly issued against the cemetery as an entirety.

IV. Complaint is made that the trial court erred in excluding evidence as to two other tax bills for sewer purposes issued against the property. We are bound to presume that all other property in the district paid in the same proportion. Without deciding whether such exclusion was error, we hold that it was not such error as calls for a reversal herein.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.